**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **BRANCH METRICS, INC.,** | |
| Plaintiff, | |
| v. | Civil Action No. 2:25-cv-00089-JRG |
| **GOOGLE LLC**, | |
| Defendant. | |

## <u>DEFENDANT GOOGLE LLC'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF THE ISSUES....................................................................................... 3

BACKGROUND ............................................................................................................... 4

I.      The Parties and Their Products ............................................................................. 4

        A.      Google:  Search, Advertising, and the Play Store................................... 4

        B.      Branch:  Branch Discovery ..................................................................... 5

ARGUMENT ..................................................................................................................... 6

I.      Legal Standard ..................................................................................................... 6

II.     Branch Is Not An Actual or Potential Competitor of Google and Therefore
        Lacks Antitrust Standing in All Four Alleged Markets ........................................ 6

        A.      General Search Services ......................................................................... 8

        B.      General Search Text Advertising .......................................................... 10

        C.      Android App Distribution ..................................................................... 11

        D.      Android Application Search Services ..................................................... 12

III.    Branch Has Not Plausibly Alleged Unlawful Tying........................................... 15

IV.     Branch Has Not Adequately Alleged Tortious Interference with Prospective
        Contractual or Business Relations ...................................................................... 18

V.      Branch's State Antitrust Claims Fail for the Same Reasons As Its Federal
        Antitrust Claims ................................................................................................. 20

CONCLUSION................................................................................................................ 21

CERTIFICATE OF SERVICE ........................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ambilu Tech. AS v. U.S. Composite Pipe S.*, 2024 WL 993284 (M.D. La. Mar. 7, 2024) .................................................................................................................12

*Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311 (5th Cir. 2020) ...............................4

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620 (5th Cir. 2002) .....................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................6

*Associated Gen. Contractors of California, Inc. v. Califorina State Council of Carpenters*, 459 U.S. 519 (1983) .............................................................................7, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................6

*Bell v. Dow Chem. Co.*, 847 F.2d 1179 (5th Cir. 1988) .................................................14

*Breaux Bros. Farms v. Teche Sugar Co.*, 21 F.3d 83 (5th Cir. 1994) ..........................17

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W. 3d 909 (Tex. 2013) .................................................................................................................18, 20

*Cooper v. Harvey*, 108 F. Supp. 3d 463 (N.D. Tex. 2015) ...........................................19

*Dibidale of La., Inc. v Am. Bank & Tr. Co., New Orleans*, 916 F.2d 300 (5th Cir. 1990) .....................................................................................................................15

*Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130 (9th Cir. 2022) ...........................4

*EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*, 2019 WL 3503240 (N.D. Tex. Aug. 1, 2019) .....................................................................21

*Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015) ....................................4

*Hall v. Hodgkins*, 305 F. App'x 224 (5th Cir. 2008) ......................................................4

*Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*, 647 F. Supp. 292 (S.D. Tex. 1986) ......................................................................................................20

*In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201 (5th Cir. 2010) ..........................11

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696 (E.D. La. 2013) .................................................................................................................13

*Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314 (5th Cir. 2009) ............... *passim*

*Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301 (5th Cir. 2018) ...................................4

*Keener v. Sizzler Fam. Steak Houses*, 597 F.2d 453 (5th Cir. 1979)...............................................17

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ....................................21

*McCormack v. NCAA*, 845 F.2d 1338 (5th Cir. 1988)...............................................................7, 10

*New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026 (5th Cir. 2023) ....................................14, 17

*Nokia Techs. OY v. HP, Inc.*, 2024 WL 1885683 (D. Del. Apr. 29, 2024)....................................14

*Norris v. Hearst Tr.*, 500 F.3d 454 (5th Cir. 2007)................................................................6, 7, 10

*Paramount Pictures Corp. v. Johnson Broad. Inc.*, 432 F. Supp. 2d 707 (S.D. Tex. 2006) .......................................................................................................................15

*Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861 (E.D. Tex. Sept. 30, 2021) ......................................................................................................18, 19

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, 2014 WL 524076 (N.D. Cal. Feb. 6, 2014) .............................................................................................19

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963 (9th Cir. 2008) ............................16

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379 (5th Cir. 1994)..............................17

*Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, 2017 WL 2729998 (N.D. Tex. June 26, 2017) ...........................................19, 20

*Song v. Drenberg*, 2019 WL 1998944 (N.D. Cal. May 6, 2019)..................................................18

*Stone v. FINRA*, 694 F. Supp. 3d 774 (E.D. Tex. 2023).......................................................18, 19

*Tesla, Inc. v. La. Auto. Dealers Ass'n*, 113 F.4th 511 (5th Cir. 2024) ...........................................7

*Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106 (E.D. Tex. July 14, 2005) .................................................................................................11, 14, 15, 20

*Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956 (E.D. Tex. 1997) ..................................................7

*United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233 (5th Cir. 1996) .......................................................................................................16, 17

*United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024)........................................... *passim*

*Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734 (5th Cir. 2015)..............................7, 10

## OTHER AUTHORITIES

Fed. R. Civ. P. 12.........................................................................................................................1

California's Cartwright Act ...................................................................................................20, 21

Sherman Act..................................................................................................................1, 15, 20, 21

Texas Free Enterprise and Antitrust Act.......................................................................................20

Cal. Bus. & Prof. Code § 16720 ...................................................................................................20

Cal. Bus. & Prof. Code § 16726 ...................................................................................................20

Cal. Bus. & Prof. Code § 16727 ...................................................................................................20

Tex. Bus. & Com. Code § 15.05...................................................................................................20

Defendant Google LLC ("Google") respectfully moves to dismiss Plaintiff Branch Metrics, Inc.'s ("Branch") Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Branch lacks antitrust standing, has not pleaded a colorable tying claim, and has not adequately alleged that Google interfered with Branch's prospective business relations.

## PRELIMINARY STATEMENT

Plaintiff Branch Metrics, Inc. alleges that it offers a product called "Discovery" or "Discovery Search" that allows users to search for content within Android mobile device applications. ¶ 10.[1] According to Branch, Google has monopoly power in each of four markets in which Branch competes, and that in each market Google has abused that power in violation of federal and state antitrust laws. ¶¶ 3-10. Specifically, Branch alleges that (1) Google's contracts with Android mobile device manufacturers and wireless carriers have unlawfully restrained trade and imposed unlawful tying arrangements in violation of Section 1 of the Sherman Act and Texas and California state antitrust laws (Counts One, Two, Three, Ten, Eleven, Thirteen, and Fourteen); (2) Google has unlawfully maintained its monopoly in, or unlawfully attempted to monopolize, an Android application search services market, a general search services market, an Android app distribution market, and a search text advertising market, in violation of Section 2 of the Sherman Act and Texas state antitrust laws (Counts Four through Nine and Twelve); and (3) Google has interfered with the prospective contractual or business relations between Branch and Android mobile device manufacturers and wireless carriers in violation of federal antitrust law, Texas and California antitrust law, and Texas and California common law (Count Fifteen).

All of Branch's antitrust claims against Google share a common defect—Branch lacks antitrust standing to bring them. Antitrust plaintiffs face a higher bar than ordinary Article III

---

[1] Citations in ¶ form refer to paragraphs from the Complaint.

standing:  they must plausibly plead "antitrust injury," *i.e.*, "injury of the type the antitrust laws were intended to prevent," and the other elements of antitrust standing that include "proper plaintiff status, which assures that other parties are not better situated to bring suit." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318-19 (5th Cir. 2009).  Branch cannot clear that standing hurdle here.  The Complaint's theory of antitrust injury is that Google and Branch are competitors or potential competitors in four asserted markets:  (1) general search services, (2) general search text advertising, (3) Android app distribution, and (4) Android application search services.  But the Complaint does not plausibly or sufficiently allege that Google and Branch compete in these markets.

To be sure, Google—a quintessential general search engine with text ads and the purveyor of the Google Play Store—competes in the first three alleged markets.  But Branch's technology for searching mobile applications does not compete or potentially compete in any of those three markets.  Branch Discovery is not a general search engine, does not run ads on a general search engine, and is not an app store.  Conversely, Branch's fourth alleged market, "Android application search services," appears to narrowly describe a niche mobile-application market tailored specifically to Branch's Discovery product.  Google's general web search services do not compete in that gerrymandered market because it is limited to searching for or within applications *on a mobile device—not searching for information on the internet*.  Because Branch's allegations of antitrust standing are legally deficient on the face of the Complaint, all of Branch's claims should be dismissed.

It is also clear from the face of Branch's Complaint that claims related to Google Search and Branch's Discovery product have appeared—and failed—in court before.  Branch repeatedly cites to and quotes liberally from the *United States v. Google* case (*see, e.g.*, ¶¶ 19, 29, 75, 78, 80,

2

84, 138, 175, 188, 191, and 194), in which Branch's co-founder and former CEO was a witness for the government.  Branch omits from its Complaint, however, that the court there found (including because Branch's co-founder and former CEO admitted as much) that Branch *does not offer* general search services—one of the four markets in which Branch alleges here that it competes with Google.  This case is an attempt by Branch to independently resuscitate claims related to its Discovery product that have already failed in that case.

Antitrust law carefully limits standing to prevent wide-ranging, duplicative lawsuits by parties who allege that they were harmed by conduct in markets in which they do not participate.  Branch's allegations are Exhibit A for the type of claims the antitrust standing requirement is designed to weed out.  The Court should dismiss all of Branch's federal and state antitrust claims (Counts One through Fourteen) in full.

Branch's tying claims fail for additional reasons, too.  It fails to adequately describe the alleged tied product market and fails to plausibly allege the requisite adverse or anticompetitive effects.

In addition to its antitrust claims, Branch brings a state-law claim for tortious interference with prospective contractual or business relations (Count Fifteen).  The Court should also dismiss this claim because Branch has not identified any independently tortious conduct or any prospective contractual or business relations that were interfered with.

## STATEMENT OF THE ISSUES

Whether Branch has adequately alleged: (1) that it has antitrust standing in the four alleged markets, (2) claims for unlawful tying, and (3) tortious interference.

**BACKGROUND**

I.    **The Parties and Their Products**

A.    **Google:  Search, Advertising, and the Play Store**

Founded in 1998, Google "is perhaps best known for Internet search, with which its name has become nearly synonymous." *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1022 (N.D. Cal. 2015).[2]  General search engines like Google draw on a vast store of webpages downloaded from the internet, called an index, to answer users' queries.  *United States v. Google LLC*, 747 F. Supp. 3d 1 at 38 (D.D.C. 2024) (cleaned up); *see also Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1134 (9th Cir. 2022).   When users enter a query in the Google Search bar, Google's algorithms rapidly scan that index and present the user with a ranked list of the most relevant web pages.  *Dreamstime.com*, 54 F.4th at 1134.

Google's flagship Search product is free to users.  Instead, Google makes money from ad revenue with companies competing in online auctions for placement of ads in Google's search results and on other websites.  *Id.*   In addition to Search, Google offers a variety of products including, relevant here, Android OS.  Android OS is a phone operating system (like Apple's iOS), which Google licenses to phone manufacturers for free.  *Feitelson*, 80 F. Supp. 3d at 1022.  Google also operates the Google Play Store, which allows Android users to search for, browse, compare, purchase, and download Android apps.  *See, e.g.*, ¶¶ 101-02.   "App stores allow consumers to easily browse, search for, access reviews on, purchase, download, and install mobile apps, using

---

[2] This Court is free to consider the content of other courts' opinions when deciding a motion to dismiss.  *See, e.g.*, *Johnson-Williams v. Citimortgage, Inc.*, 750 F. App'x 301, 303-04 (5th Cir. 2018) ("[T]he district court properly took judicial notice of the previous court judgments and opinions—all publicly available documents."); *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) ("In addition to facts alleged in the pleadings, however, the district court may also consider matters of which it may take judicial notice.  And it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (cleaned up); *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020).

the mobile device itself and an internet connection." ¶ 102.  Most Android users download apps through app stores, though there are other channels for downloading apps, such as "direct downloading" from the app developer.  ¶ 111.   Branch does not aver that it operates a general search engine or an app store.

### B.    Branch:  Branch Discovery

Founded in 2013, Branch is a Delaware corporation headquartered in Mountain View, California.  ¶ 35.  According to Branch's website (available at https://www.branch.io/about), "Branch provides the industry's leading mobile linking and measurement platforms, unifying user experience and attribution across devices, platforms, and channels."  The "about" page on Branch's website touts Branch's ability to "[i]mprove ads['] [return on investment] with sophisticated attribution with Branch Performance," and "[b]uild powerful omni-channel experiences with Branch Engagement."  Conspicuously absent from Branch's website is the Discovery service discussed in Branch's Complaint.

Branch Discovery is billed as a "search engine for applications."  *United States v. Google*, 747 F. Supp. 3d at 37.   "Branch uses 'deep-link' technology to return search results . . . for specific content within an app."  ¶ 10.  In essence, instead of searching the entire internet, Discovery purports to allow users to search for content across mobile device apps without the user needing to repeat the same search within each app.

Unlike a general search engine, "Branch's product does not index the web and (in its presently deployed version) does not deliver web results."  *United States v. Google*, 747 F. Supp. 3d at 37.  Instead, Branch needs to work "individually with every app company to get them to send the actual pages inside of the app" for inclusion in Discovery.  *Id.* (cleaned up).  If a user's query generates results within a Branch-partnered app which the user has not downloaded, Discovery

"detect[s] if a user needs to install the app," and then prompts "the user to download the app." ¶ 43.  Branch also seeks to monetize Discovery by allowing app developers to pay for Branch to suggest their app to users for downloading.  ¶ 50.

## ARGUMENT

### I.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[A] court must accept as true all of the allegations contained in a complaint," but that acceptance "is inapplicable to legal conclusions," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for stating a claim.  *Id.*  When a plaintiff pleads proper factual allegations, those allegations nonetheless "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 (2009) (A "complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.").  Dismissal is "proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."  *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 624 (5th Cir. 2002) (citation omitted).  It is not "proper to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged."  *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (cleaned up).

### II.    Branch Is Not An Actual or Potential Competitor of Google and Therefore Lacks Antitrust Standing in All Four Alleged Markets

Branch's Complaint fails because Branch does not adequately allege antitrust standing in any of the four markets in which it alleges that it competes.  As the Fifth Circuit has explained, antitrust standing is a higher bar than Article III standing.  *Jebaco*, 587 F.3d at 318-19.  Antitrust

plaintiffs must demonstrate "antitrust injury," *i.e.*, "injury of the type the antitrust laws were intended to prevent," and the other elements of antitrust standing, among which is "proper plaintiff status, which assures that other parties are not better situated to bring suit." *Id.* (cleaned up).

The plaintiffs' injury, to comprise antitrust injury, must "reflect the anti-competitive effect either of the violation or of the anticompetitive acts made possibly by the violation"—a requirement the Fifth Circuit interprets "narrowly." *Tesla, Inc. v. La. Auto. Dealers Ass'n*, 113 F.4th 511, 528 (5th Cir. 2024) (citation omitted).  As for the other elements of antitrust standing, the Fifth Circuit also asks whether this plaintiff is the right person to sue, considering the "causal link to the defendant," "whether other parties have been more directly harmed," and "whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damages apportionment." *Norris*, 500 F.3d at 465 (citing *McCormack v. NCAA*, 845 F.2d 1338, 1341 (5th Cir. 1988)).

Under those twin requirements, the prototypical parties with antitrust standing are competitors, purchasers, and consumers in the relevant markets, although "standing is not necessarily limited to this group." *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 737 (5th Cir. 2015); *see Norris*, 500 F.3d at 467 (affirming dismissal where plaintiffs were "neither consumers nor competitors in the market"); *Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 969-70 (E.D. Tex. 1997) (same); *see also Associated Gen. Contractors of California, Inc. v. Califorina State Council of Carpenters*, 459 U.S. 519, 539 (1983) ("AGC") (affirming dismissal for lack of antitrust standing when plaintiff was "neither a customer nor a competitor in the market in which trade was [allegedly] restrained").

Branch's sole theory of standing is that Branch and Google "compete[]" or are "competitor[s]" in four alleged markets:  (1) general search services, (2) general search text

advertising, (3) Android app distribution, and (4) Android application search services.  *See* ¶ 215. But the Complaint lacks non-conclusory allegations explaining how Google and Branch compete (or would compete) with each other in any of these asserted markets.  Because of that pleading failure, the Court should dismiss Branch's Complaint for lack of antitrust standing.

### A.    General Search Services

Branch lacks standing in the general search services market for the simple reason that Branch Discovery is not a general search engine and Branch does not plead otherwise.  Branch alleges (at ¶ 25) that "[g]eneral search services in the United States," is a relevant market in which "search services allow consumers to find responsive information on the internet by entering keyword queries in a general search engine such as Google, Bing, or DuckDuckGo."

The Complaint does not allege that Branch Discovery is a general search service that competes with Google.  To the contrary, the Complaint recognizes (at ¶ 77) that there "are only four meaningful general search engines in this market: Google, Bing, Yahoo!, and DuckDuckGo." And the Complaint further notes (at ¶ 81) that "only two U.S. firms — Google and Microsoft — maintain a comprehensive search index," which is a tool the Complaint calls "fundamental" to any general search engine.  "Unlike a [general search engine], Branch's product does not index the web and (in its presently deployed version) does not deliver web results."  *United States v. Google*, 747 F. Supp. 3d at 37.  Instead, as Branch acknowledges (at ¶ 45), Discovery is "a mobile search technology" which "allows end users to search for and discover content contained within apps, regardless of whether those apps are already installed on the user's mobile device."  In other words, Discovery is (1) exclusively for mobile devices, and (2) limited to Android apps (and further limited to apps whose developers have agreements with Branch).  That is very different from the web-based, internet-wide general search services that Google (and Bing and Yahoo!) offer.

To the extent Branch alleges that Discovery is a "potential substitute" for Google Search, Compl. p. 28, potential competitors only have antitrust standing if they have an intent to and are "prepared[] to enter a market." *Jebaco*, 587 F.3d at 321.  Here, there is no allegation that Branch is poised (or even aspires) to offer a full-scale general search service to rival Google or Bing. Rather, the Complaint alleges (at ¶ 81) there are "significant barriers to entry in the general search services market" given the need to index the entire internet.  Those alleged barriers stem from the need for "significant capital investment, highly complex technology, access to effective distribution, and adequate scale"—not any allegedly anticompetitive conduct on Google's part. Branch has not alleged that it intends to offer a general search engine, much less that it would succeed in doing so.  "Branch's technology has [not] shown potential to become a viable platform substitute for Google." *United States v. Google*, 747 F. Supp. 3d at 170.  Branch admitted in earlier litigation that Discovery is "totally different and distinct from Google search, and there is zero impact on Google search traffic after implementing Branch."  *Id.*  Those concessions foreclose antitrust standing in the general search services market.

Courts routinely dismiss claims for lack of antitrust standing where plaintiffs like Branch try to allege an injury in the general search services market.  Take *Fotobom Media, Inc. v. Google LLC*, where a mobile keyboard application company sought to bring antitrust claims against Google in this market.  719 F. Supp. 3d 33, 40 (D.D.C. 2024).  The court explained that the plaintiff company lacked antitrust standing because its product, like Branch's, was "not, in any sense, a general search engine.  It does not itself search the web, and it does not . . . provid[e] results for different search types."  *Id.* at 48.  Similarly, in *Greenflight Venture Corp. v. Google LLC*, the court dismissed a web developer's claims against Google because the plaintiff had "not sufficiently alleged that it is a market participant in the general search services market, nor has the Plaintiff

alleged any other basis for standing." 2024 WL 4723121, at *1, *4. (S.D. Fla. Nov. 8, 2024). Branch's mobile-only search of Android applications whose developers have entered agreements with Branch is not a competitor, or even potential competitor, with Google Search in the alleged relevant product market.

That Branch is not a competitor in the general search services market leaves Branch not only lacking antitrust injury, but also shows that Branch is not a proper antitrust plaintiff. Standing exists for plaintiffs with an "antitrust injury," *i.e.,* an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Waggoner*, 612 F. App'x at 736-37. That is why "[t]ypically, parties with antitrust injury are either competitors, purchasers, or consumers in the relevant market." *Id.* at 737. Branch's alleged injury, however, stems from conduct "in a market in which [it] is not a participant." *Id.* at 738. Affording antitrust standing broadly (including to participants in different markets), "would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment"—the very harms antitrust standing seeks to avoid. *See Norris*, 500 F.3d at 465. Branch therefore lacks the requisite "connection between the violations" alleged in the general search services market "and any injuries" to Branch in other markets. *McCormack*, 845 F.2d at 1342.

### B.    General Search Text Advertising

Branch's next theory confusingly collapses multiple alleged markets. Branch identifies (at ¶ 131) its second alleged market as "[s]earch advertising in the United States," *i.e.*, "all types of ads generated in response to online search queries." But Branch's monopoly allegations (at ¶¶ 137-38) involve only the "general search text advertising," *i.e.*, text-based ads that appear with search results. Branch looks to that submarket presumably because the court in *United States v.*

*Google* expressly found that Google lacks monopoly power in the broader search advertising market.  747 F. Supp. 3d at 133.

Branch does not plausibly allege that it competes with Google in the narrower general search text advertising market.  Branch's threadbare allegations (at ¶ 139) that it competes or is prepared to compete in this market are limited to three conclusory sentences.  But the Court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions," when, as here, they are not "supported by factual allegations."  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted).

The search text advertising market is also by definition limited to results on general search engines—a product which, as explained, *supra* Part II-A—Branch does not offer.  This is because general search engines pull results from a dramatically wider universe than just Android mobile apps, and so general search engines in turn provide advertisers with a dramatically wider universe of potential exposure.  Android-app-only advertisements like those Branch Discovery could theoretically offer "are not reasonably interchangeable," with the advertising offerings Google provides in Search, so the Court should not "accept the plaintiff's allegations of market membership," and find instead that Branch lacks "standing to sue in the purported . . . market" it alleges.  *Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106, at *2-3 (E.D. Tex. July 14, 2005).

### C.    Android App Distribution

Branch's third alleged market—"Android app distribution"—fails for a familiar reason: Branch Discovery does not compete in that market.  Branch describes (at ¶ 101) an Android app distribution market as "the market in which consumers may obtain apps for use on Android mobile devices."  And Branch notes (at ¶¶ 101, 109-110, 112) that the market includes the Google Play

Store and other "alternative Android app stores" like those maintained by Samsung, Amazon, and Aptoide.  But just as Branch's Discovery is not a general search engine, it is also not an app store.

Branch Discovery is a tool for "find[ing] responsive information in mobile applications," not for downloading them.  *See* ¶ 54.  With Discovery, "users can be *directed* to download relevant apps in [competing] app stores."  ¶ 129 (emphasis added).  In other words, Branch alleges (at ¶ 129) that customers can use its product to *find* apps and then download those apps "by direct download or competing app stores."  Because *Branch* "is not competing with [Google], or a customer of [Google's] products," it is not a proper plaintiff with antitrust standing.  *See Ambilu Tech. AS v. U.S. Composite Pipe S.*, 2024 WL 993284, at *6 (M.D. La. Mar. 7, 2024).  To the extent Branch speculates that its greater success could facilitate entry of other app stores, or lead more apps to pursue direct downloading, it fails to identify a reason why those ***actual*** market participants could not bring their own claims about these alleged practices.  *See AGC*, 459 U.S. at 542 ("The existence of an identifiable person whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party" to sue).

### D.    Android Application Search Services

Branch's allegations regarding an "Android application search services" market fail because Branch only offers bare, conclusory allegations that Google competes in this bespoke alleged market that Branch appears to tailor to its own product.  Branch describes Android application search (at ¶ 54) as enabling users "to find responsive information in mobile applications by entering keyword queries in an application search service."  The results of a user's search are content taken directly from inside apps, not webpages that users access on the internet via a web browser.  ¶ 56.  For example, Branch alleges that a user searching an Android application

search service for "running shoes" would get "get results with relevant content from across a broad universe of available apps, including apps of running shoe companies, apps for various retailers selling running shoes (such as the Amazon app), consumer review apps, running-focused apps, exercise related apps, and more." ¶ 57.  Branch concedes (at ¶ 58) that "[g]eneral search engines that do not provide Android in-app content in response to search queries are not perfect substitutes for Android application search services."  And Branch never adequately alleges that there is actually a specific user demand for searching for in-app content, as opposed to searching more broadly for information on the web.  Google Search and Branch Discovery are quite simply not interchangeable products from a user's perspective.

That concession means Google Search ("a general search engine" (at ¶ 6)) does not compete with Branch in the application search services market, and that Branch lacks antitrust standing to sue Google related to its supposed conduct in that market.  In an attempt to allege (at ¶ 58) that Google Search competes with Branch Discovery to provide in-app results,  Branch selectively quotes from publicly available Google guidance telling app developers that "Google can crawl through your app content and present your Android app as a destination to users through Google Search results."    ¶ 58.    But the whole document (available here: https://developer.android.com/training/app-indexing)[3] reveals what Branch omitted: "Google can crawl through your app content and present your Android app as a destination to users through Google Search results, <u>when that content corresponds to a web page that you own.</u>"  (emphasis added).  In other words, Google Search only takes users to content related to a product app if that content is found on an associated webpage that Google crawls and displays on Google's search

---

[3] Because the Complaint quotes from this document without contesting its authenticity, the Court may appropriately consider the document in the motion-to-dismiss posture.  *See In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 709-10 (E.D. La. 2013).

results page.  Branch does not allege that Google Search otherwise surfaces in-app content as part of a general web search and does not offer search "tailored to the demand for app content"—an integral feature of the market as Branch defines it (¶ 56).  Google and Branch are thus not competitors in the Android app search services market, and Branch lacks antitrust standing.

That lack of competition between Google and Branch is confirmed by the Fifth Circuit's requirements for pleading a valid market for antitrust claims.  A "legally cognizable product market must . . . consider interchangeability and cross-elasticity of demand."  *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1037 (5th Cir. 2023) (cleaned up).  Where "the products claimed to be within the market are not reasonably interchangeable, the Court cannot accept the plaintiff's allegations of market membership" and the plaintiff lacks "standing to sue in the purported . . . market."  *Tessera*, 2005 WL 1661106, at *2-*3; *see also Fotobom*, 719 F. Supp. 3d at 45.

As should be apparent from the Complaint (and as explained above), Branch Discovery and Google Search are not interchangeable substitutes.  No one would give up a general search engine like Google for the limited app-only functionality that Branch alleges it offers.  Conversely, Google's general, web-focused search results do not include the in-app-only results that Branch alleges (at ¶ 10) set its product apart.  "Without evidence demonstrating that consumers can use" Google Search and Branch Discovery to do the same things, neither product can "be considered part of the relevant market."  *Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1184 (5th Cir. 1988).  And because Branch "has not pled facts showing that all products" in the alleged market "are readily substitutable for one another, are reasonably interchangeable, or share cross-elasticity of demand," its complaint should be dismissed.  *Nokia Techs. OY v. HP, Inc.*, 2024 WL 1885683, at *4 (D. Del. Apr. 29, 2024).

14

Branch cannot cure this pleading defect by alleging that it was harmed by Google's alleged conduct in other markets (in which Google *does* compete). As this Court has explained, a plaintiff cannot establish antitrust standing by alleging that it was "tangentially affected by the alleged anti-competitive behavior" in a different market. *Tessera*, 2005 WL 1661106, at *3. In *Tessera*, the plaintiff developed and licensed "packaging technology" for a particular class of computer chips, which the defendants manufactured. *Id.* at *1. The plaintiff claimed that the "Defendants conspired to reduce the output of [the] chips, raising the price of the chips and consequently lowering demand," which in turn lowered demand for the plaintiff's technology. *Id.* The plaintiff lacked standing, however, because the alleged anticompetitive conduct and effects occurred in different markets. The defendant allegedly acted in the chip market while the plaintiff's product competed in the technology market. *Id.* at *3. Those "market ripples" did not suffice for antitrust standing. *Id.* Here too, Branch at most alleges that Google engaged in anticompetitive conduct in the markets in which Google competes (like general search) and that Branch felt effects in its alleged market (Android app search). Under this Court's caselaw, that is not enough.

## III.    Branch Has Not Plausibly Alleged Unlawful Tying

In addition to its lack of standing, which is sufficient to warrant dismissal, Branch's unlawful tying claims (Counts Two, Three, Eleven, and Fourteen) fail for additional reasons.

Antitrust law prohibits certain "tying arrangements, in which the seller of one product (the tying product) conditions the sale of that product on the consumer's purchase or provision of another (the tied product)." *Dibidale of La., Inc. v Am. Bank & Tr. Co., New Orleans*, 916 F.2d 300, 305 (5th Cir. 1990). "[S]uccessful tying claims under [the Sherman Act are] difficult to attain." *Id.* Branch alleges that the tying arrangements violate the antitrust laws under any of the "*per se*," "quick look," or "rule of reason" tests. ¶ 252. Under any test, Branch must "define the parameters" of the two markets that are supposedly tied together. *Paramount Pictures Corp. v.*

*Johnson Broad. Inc.*, 432 F. Supp. 2d 707, 708-9 (S.D. Tex. 2006) (citing *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984)) (*per se*); *United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233, 235 n.2 (5th Cir. 1996) (rule of reason).  It has failed to plausibly do so here.

Branch alleges that Google has used its alleged market power in the Android app distribution market (through the Google Play Store) and the general search market (through Google Search), "individually and collectively," to coercively prohibit Android mobile device distributors from installing "alternative search products" (like Branch Discovery) in the Android application search market.  ¶¶ 258, 260, 334, 360.  Branch separately alleges that Google has used its alleged market power in the Android app distribution market (through the Google Play Store) to force or coerce Android mobile device distributors to pre-install Google Search and thus restrain competition in the Android application search services market and general search services market. ¶¶ 268-70, 336, 362.

Each of Branch's tying claims, therefore, presupposes a "tied market" that includes the alleged Android application search services market where Google and Branch both supposedly compete.  But as explained above, *supra* Part II, Branch fails to adequately define such an Android application search services market.  That alone means there can be "no cognizable tying claim" grounded in allegations about that market.  *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008).  Rejecting even that market on standing grounds should lead to dismissal of all tying claims.

The flaws in the definition of the Android application search services market are apparent from Branch's confusing and inconsistent allegations in the Complaint.  For example, when setting out its four alleged relevant markets, Branch includes Branch Discovery Search in the general

search services market along with Google Search.  ¶¶ 85-100.  But, when alleging one of its tying claims, Branch makes the conclusory allegation that Google Search is a "separate and distinct product[] from application search products, like Branch Discovery Search."  ¶ 259.  The other one of Branch's alleged tying claims describes a restraint on competition "in the markets for the tied product—the general search services and the Android application search services markets, <u>in which Google Search competes</u>."  ¶ 270 (emphasis added).  These inconsistencies—along with the way Branch apparently shapes the contours of the application search services market to fit its product alone—demonstrate that Branch has not pleaded a legally sufficient product market.  *See Cemetery Tour Guides*, 56 F.4th at 1036-37.

Branch must also plausibly plead an "anticompetitive effect," *see United Farmers*, 89 F.3d at 235 n.2 (*per se* standard), or "actual adverse effect on competition," *see Breaux Bros. Farms v. Teche Sugar Co.*, 21 F.3d 83, 89 (5th Cir. 1994) (rule of reason standard), in the tied markets.  *See also Roy B. Taylor Sales, Inc. v. Hollymatic Corp.,* 28 F.3d 1379, 1382-85 (5th Cir. 1994).  Branch has not plausibly pleaded anticompetitive or actual adverse effects in the Android application search services market.  Branch claims the relevant anticompetitive effect arises out of Google's conduct "foreclosing all competing products and rival firms in the tied product markets."  ¶ 273.  That Branch's creative boundaries in its bespoke Android application search services market are drawn so narrowly that Discovery is the *only* product leaves the Complaint bereft of allegations of any foreclosure, let alone competitive harm, in such a market.  There is no well-pleaded allegation that Google's supposed tie forces anyone *to take a Google service* in lieu of a Branch service in the supposed tied market.  *See, e.g.*, *Keener v. Sizzler Fam. Steak Houses*, 597 F.2d 453, 456 (5th Cir. 1979).  Because Branch fails to adequately plead tied markets or anticompetitive or actual adverse effects, its tying claims must fail.

17

## IV.    Branch Has Not Adequately Alleged Tortious Interference with Prospective Contractual or Business Relations

In Branch's fifteenth and final Count, it alleges that Google tortiously interfered with its prospective contractual or business relationships with Samsung, AT&T, and other unspecified Android device manufacturers and wireless carriers. ¶ 368. Branch purports to bring this claim under "federal antitrust law, Texas and California antitrust law, and Texas and California common law." ¶ 372. This claim fails under any source of law.

Google is unaware of any authority creating a freestanding federal-law tortious interference claim. But to adequately plead tortious interference with a prospective business relationship under Texas law, Branch must establish five elements:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Stone v. FINRA*, 694 F. Supp. 3d 774, 789 (E.D. Tex. 2023) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W. 3d 909, 923 (Tex. 2013)). California courts apply an analogous five-prong test. *Song v. Drenberg*, 2019 WL 1998944, at *6 (N.D. Cal. May 6, 2019) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003)). Branch fails to meet its burden on several required elements.

*First*, Branch has not alleged a "reasonable probability" that it would have had a business relationship with a third party absent Google's alleged interference. This element requires Branch to "describe the specifics of a proposed agreement that never came to fruition." *Stone*, 694 F. Supp. 3d at 789 (quoting *Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021)). But Branch offers no such example and instead outlines its past involvement

with other companies and future business plans in speculative broad strokes.  *E.g.*, ¶ 21, 92, 94.

Such "sweeping, nonspecific, and unsupported pronouncements" do not state a claim under Texas

or California law.  *See Pureshield*, 2021 WL 4492861, at *4-5.  Compare the *sufficient* allegations

in *Cooper v. Harvey*, 108 F. Supp. 3d 463, 472 (N.D. Tex. 2015), which detailed a specific

"proposed Licensing and Distribution Agreement between" the plaintiff and a specific contractual

counterparty, with the *insufficient* allegations in *Rheumatology Diagnostics Lab'y, Inc. v. Aetna,*

*Inc.*, 2014 WL 524076, at *14 (N.D. Cal. Feb. 6, 2014)   which involved only "speculative

economic relationships" between the plaintiff and "potential customers," rather than any "existing

relationship with an identifiable buyer."

    *Second*, Branch has not shown any independently tortious or unlawful act.  The Complaint

identifies no allegedly unlawful acts other than the primary alleged violations of antitrust law, that

is, Google's contracts with Android mobile device distributors and wireless carriers.  ¶ 370.  For

the reasons stated above, claims based on that conduct fail, and are not independently tortious.

*Stone*, 694 F. Supp. 3d at 790; *see also Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge*

*Jeep-Downers Grove, LLC*, 2017 WL 2729998, at *11 (N.D. Tex. June 26, 2017).

    *Third*, Branch has not alleged proximate causation.  Proximate causation has two key

requirements: cause in fact (*i.e.*, but-for causation) and foreseeability.  *BHL Boresight*, 2016 WL

8648927, at *12 (S.D. Tex. Mar. 29, 2016) (citation omitted).  Branch alleges neither.  Branch

offers only bare and conclusory allegations that its purported lost business relationships came

about due to Google's conduct, *e.g.*, ¶ 373, as opposed to any number of legitimate business

reasons, none of which are reckoned with or even considered in the Complaint.  Moreover, the

Complaint does not explain how Google could have foreseen that its multibillion-dollar contracts

with mobile-phone manufacturers like Samsung could have snuffed out a product that Branch does not even highlight on its own website.  *Supra* Part I.

Fourth, Branch has not sufficiently alleged "actual damage or loss as a result" of Google's conduct.  *Coinmach*, 417 S.W. 3d at 923.  Such a loss "must be ascertainable at the time of the litigation."  *Santander*, 2017 WL 2729998, at *11.  But Branch offers only conclusory statements that the company has been harmed and lost prospective work.  *See, e.g.*, ¶ 217.  That is not enough.  *BHL Boresight*, 2016 WL 8648927, at *12.  Indeed, Branch offers little-to-no facts in support of its damages claim at all: it offers no examples of specific contracts it lost or other "expla[nation] how or whether [Branch] suffered any actual damage or loss." *See id.* at *12.  Such a failure is "fatal" to this claim.  *Id.*

## V.    Branch's State Antitrust Claims Fail for the Same Reasons As Its Federal Antitrust Claims

Branch also alleges violations of the Texas Free Enterprise and Antitrust Act, Tex. Bus. & Com. Code § 15.05(a) (Count Ten), § 15.05(c) (Count Eleven), § 15.05(b) (Count Twelve), and the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, 16726, and 16727 (Counts Thirteen and Fourteen).  These claims fail for the same reasons identified *supra* in Parts II, III, and IV.

As to Texas, the relevant provisions of the Texas Free Enterprise and Antitrust Act "mirror the language of Sections One and Two of the Sherman Act."  *Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*, 647 F. Supp. 292, 298 (S.D. Tex. 1986).  Courts therefore analyze antitrust standing under Texas law as "co-extensive with the judicial interpretations of the Sherman Act," and "collapse" the two inquiries.  *Tessera*, 2005 WL 1661106, at *1.  The Court should thus dismiss Counts Ten through Twelve for the same reasons it should dismiss Branch's federal antitrust claims.

And as to California, the Cartwright Act was "modeled after the Sherman Act" and thus "mirrors the analysis under federal law." *EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*, 2019 WL 3503240, at *19 (N.D. Tex. Aug. 1, 2019) (quoting *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001)).  Courts use the same factors to analyze antitrust standing under California's Cartwright Act.  *Compare Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (California Cartwright Act), *with Jebaco*, 587 F.3d at 318-19.  For the reasons above, the Court should dismiss Counts Thirteen and Fourteen too.

## CONCLUSION

For the foregoing reasons, Branch's Complaint should be dismissed with prejudice.

Dated: April 11, 2025                                    Respectfully submitted,

                                                         By: /s/ Melissa R. Smith
                                                         Melissa R. Smith (Bar #24001351)
                                                         GILLAM & SMITH LLP
                                                         303 S. Washington Avenue
                                                         Marshall, Texas 75670
                                                         Tel: (903) 934-8450
                                                         Fax: (903) 934-9257
                                                         melissa@gillamsmithlaw.com

                                                         WILLIAMS & CONNOLLY LLP
                                                         John E. Schmidtlein
                                                         Benjamin M. Greenblum
                                                         Alexander S. Zolan
                                                         680 Maine Avenue SW
                                                         Washington, DC 20024
                                                         Tel: (202) 434-5000
                                                         Fax: (202) 434-5029

ROPES & GRAY LLP
Matthew L. McGinnis
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7567
matthew.mcginnis@ropesgray.com

Adam R. Safadi
2099 Pennsylvania Avenue NW
Tel: (202) 508-4717
adam.safadi@ropesgray.com

*Counsel to Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 11th day of April, 2025.

/s/ Melissa R. Smith
Melissa R. Smith (Bar #24001351)
melissa@gillamsmithlaw.com
