IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRANCH METRICS, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case 2:25-cv-00089-JRG |

**REPLY IN SUPPORT OF GOOGLE'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.   Branch Lacks Competitor or Nascent Competitor Standing In All Markets. ..................... 2

II.  No Exception to the Market Participant Rule Applies......................................................... 6

III. Branch's Unlawful Tying Claims Fail. ................................................................................ 8

IV.  Branch Has Not Shown Google Improperly Interfered with Any Prospective
     Business Relationship. ......................................................................................................... 9

CONCLUSION ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 2022 WL 980791 (W.D. Tex. Mar. 31, 2022) ...........................................................................................................4

*Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248 (5th Cir. 1992) ...........................................1

*Anderson v. 21st Mortg. Corp.*, 2016 WL 11582928 (W.D. Tex. Sept. 26, 2016)...........................2

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)................................................................................................................................6, 7

*BHL Boresight, Inc. v. Geo-Steering Solutions, Inc.*, 2016 WL 8648926 (S.D. Tex. Mar. 29, 2016) ................................................................................................................................10

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) ..............................8

*Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148 (9th Cir. 2001).......................................7

*Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974 (N.D. Cal. 2010).............................8

*Delta Produce, L.P. v. H.E. Butt Grocery Co.*, 2013 WL 12121118 (W.D. Tex. Jan. 17, 2013) ....................................................................................................................................2

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301 (5th Cir. 1997) ...................1

*Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33 (D.D.C. 2024) ..................................3, 8

*Greenflight Venture Corp. v. Google LLC*, 2024 WL 4723121 (S.D. Fla. Nov. 8, 2024)...............3

*Hughes v. Tobacco Inst.*, 2000 WL 34004261 (E.D. Tex. May 5, 2000) ....................................2, 6

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001)...........................................................2

*In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007).............................................7

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696 (E.D. La. 2013) ...................5

*Jayco Sys., Inc. v. Savin Bus. Machines Corp.*, 777 F.2d 306 (5th Cir. 1985) ................................3

*Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314 (5th Cir. 2009) .........................................7

*Loco Brands, LCC v. Butler Am., LLC*, 2019 WL 3015046 (E.D. Tex. Jan 28, 2019) ...................9

*Lucasys v. PowerPlan Inc.*, 576 F. Supp. 1331 (N.D. Ga. 2021) ....................................................4

*Miller v. Granados*, 529 F.2d 393 (5th Cir. 1976)..........................................................................2

*Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980 (5th Cir. 1983) ........................................... 8

*Navo S. Dev. Partners, Ltd. v. Denton Cnty. Elec. Co-op., Inc.*, 669 F. Supp. 2d 747 (E.D. Tex. 2009) ................................................................................................................................. 2

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007) ........................................................ 8

*Pulse Network, LLC v. Visa, Inc.*, 30 F.4th 480 (5th Cir. 2022) ..................................................... 2

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, 2014 WL 524076 (N.D. Cal. Feb. 6, 2014) .................................................................................................................................... 9, 10

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690 (4th Cir. 2021) .......................................... 8

*Stone v. FINRA*, 694 F. Supp. 3d 774 (E.D. Tex. 2023) ............................................................... 10

*Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106 (E.D. Tex. July 14, 2005) ............... 4, 7, 8

*TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2019 WL 5691996 (E.D. Tex. Aug. 29, 2019) ......................................................................................................................................... 1

*United States v. Google*, 747 F. Supp. 3d 1 (D.D.C. 2024) .................................................. 2, 3, 5

*Waggoner v. Denbury Onshore, LLC*, 612 F. App'x 734 (5th Cir. 2015) ...................................... 5

## OTHER AUTHORITIES

Cartwright Act .................................................................................................................................. 7

Sherman Act ..................................................................................................................................... 7

Tex. Bus. & Com. Code § 15.04 ...................................................................................................... 7

**INTRODUCTION**

To plausibly state an antitrust claim, Branch must have suffered an antitrust injury. Antitrust plaintiffs typically attempt to satisfy the antitrust injury requirement by alleging they are competitors, purchasers, or consumers in the market in which the defendant violated the antitrust laws. Branch argues—unsuccessfully—that it is a "competitor, or at least a nascent competitor," but also argues at length that it has standing under other narrow theories of standing. None of Branch's theories of standing hold water, and Branch's resort to these alternative theories of standing only underscores the implausibility of Branch's allegations that it suffered an antitrust injury. Because Branch lacks antitrust standing, Google respectfully requests that the Court dismiss all its federal and state antitrust claims (Counts One through Fourteen). Google also respectfully requests that the Court dismiss Count Fifteen because Branch has failed to plausibly allege tortious interference with prospective contractual or business relations.

**ARGUMENT**

Google's motion to dismiss targets Branch's deficient antitrust standing allegations. Branch does not participate with Google in any of the alleged relevant markets, and it has failed to show that an exception to the market participant rule applies. The Fifth Circuit "narrowly interpret[s] the meaning of antitrust injury," *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992), and defined "exceptions" aside, "antitrust standing is limited to participants in the relevant market who are competitors, purchasers, or sellers because only they suffer antitrust injury." *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2019 WL 5691996, at *19 (E.D. Tex. Aug. 29, 2019).[1] "Parties whose injuries, though flowing from that which makes the defendant's

---

[1] The principal cases Branch cites are not to the contrary; all involved plaintiffs who suffered antitrust injury in the same market in which the defendant operated. *Doctor's Hosp. of Jefferson,*

1

conduct unlawful, are experienced in another market do not suffer antitrust injury." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 423 (5th Cir. 2001) (citation omitted). Branch has failed to plead antitrust standing, and its Complaint should be dismissed.[2]

## I.  Branch Lacks Competitor or Nascent Competitor Standing In All Markets.

Branch does not plausibly plead that it suffered an antitrust injury as a competitor of Google in any market.

**General Search Services.** Branch does not plausibly allege that it competes with its app-only Discovery product in the general search market. In its Complaint (at ¶ 71), Branch alleges that "[g]eneral search services allow consumers to find responsive information <u>on the internet</u> by entering keyword queries <u>in a general search engine</u> such as Google, Bing, or DuckDuckGo." But in opposing Google's motion to dismiss, Branch did not attempt (at 13) to argue that Discovery is "a 'general search engine.'" Instead, it argued (at 14–15) that Discovery is an "'alternative and enhancement'" to "'traditional web-based search'" that seeks to capitalize on a "major shift" by consumers from computers/web content to mobile device/app content. Far from supporting Branch's competitor status in the general search market, this speculative argument instead posits that consumer demand (and Branch's Discovery) is moving *away* from general search to a different one of Branch's proposed relevant markets–Android app search. Nor do statements by Google and others in the documents cited by Branch (at 15) make it plausible that Branch, which did not seek to create a general search engine, competes in the general search market. *See United States*

---

*Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997); *Pulse Network, LLC v. Visa, Inc.*, 30 F.4th 480, 491 (5th Cir. 2022); *Miller v. Granados*, 529 F.2d 393, 397-98 (5th Cir. 1976).

[2] Courts regularly dismiss antitrust complaints on standing grounds. *See, e.g.*, *Navo S. Dev. Partners, Ltd. v. Denton Cnty. Elec. Co-op., Inc.*, 669 F. Supp. 2d 747, 755 (E.D. Tex. 2009); *Anderson v. 21st Mortg. Corp.*, 2016 WL 11582928, at *6 (W.D. Tex. Sept. 26, 2016); *Hughes v. Tobacco Inst.*, 2000 WL 34004261, at *9 (E.D. Tex. May 5, 2000); *Delta Produce, L.P. v. H.E. Butt Grocery Co.*, 2013 WL 12121118, at *3 (W.D. Tex. Jan. 17, 2013).

*v. Google*, 747 F. Supp. 3d 1, 170 (D.D.C. 2024); *Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33, 40 (D.D.C. 2024); *Greenflight Venture Corp. v. Google LLC*, 2024 WL 4723121, at *1, *4 (S.D. Fla. Nov. 8, 2024).

Branch devotes significant space to *alternative* theories of standing in the general search market, including (at 16–18) that it should at least be considered a "nascent competitor." Nascent competitors are a *subset* of competitors, and Branch must still plausibly allege "first that it intended to" enter the general search market, "second, that it was prepared to" do so, and third that there was "a high likelihood that" Branch would have successfully done so "but for the alleged violations of the antitrust laws." *Jayco Sys., Inc. v. Savin Bus. Machines Corp.*, 777 F.2d 306, 314 (5th Cir. 1985). Branch does not plausibly allege that it was a nascent competitor in the general search market for the same reasons it cannot plausibly allege in-market competitor status.

Branch does not allege that it intended to, was prepared to, or that there was a high likelihood that it would develop "a general search engine," a "comprehensive search index," and the ability to "access an extremely large and diverse volume of information *across the internet*." Compl. ¶¶ 72, 87 (emphasis added). This is what the Complaint alleges that a general search services provider does. The plausibility gap created by the absence of those allegations cannot be filled by allegations that Discovery connected to the internet (at ¶¶ 17, 87); that Samsung and AT&T expressed interest in a version of Discovery (at ¶¶ 17, 27–30, 69–70, 87, 89–92, 120–22, 173, 177, 368–69); or that there is supposedly growing interest in Android app search services (at ¶¶ 14–15, 45, 55–56, 79–80). Finally, Branch does not explain why one court was wrong in expressly finding (based on a full record) that Branch was not a nascent competitor in the general search market due to a lack of evidence that "Branch's technology has shown potential to become a viable platform substitute for Google." *United States v. Google*, 747 F. Supp. 3d at 170.

3

Branch's reliance on *Lucasys v. PowerPlan Inc.*, 576 F. Supp. 3d 1331 (N.D. Ga. 2021), an out-of-circuit nascent competitor case, is misplaced. There, the alleged nascent competitor sought to develop an "overall utility management software suite" to compete in the "utility software" market with the defendant, and potentially replace the defendant's software suite. *Id*. at 1334. But the replacement software suite would still be "utility software." Here, Branch does not allege that Discovery was intended to have the fundamental characteristics of a general search engine. Branch's other cited case, *Sanger Insurance Agency v. HUB International*, is equally irrelevant, as there was "no question regarding the sincerity of [plaintiff's] ambitions to" enter the market, and the defendant only "dispute[d] the second element, [plaintiff's] preparedness." 802 F.3d 732, 738 (5th Cir. 2015).

**Android App Search Services.** As explained in Google's Motion (at 4–6, 12–15), Branch lacks antitrust standing in the Android app search market because Branch has failed to plausibly allege that *Google* competes in that market. The Complaint alleges that Google and Branch provide different products with different characteristics: Google provides a general, web-based search engine, whereas Discovery is a mobile-only product that searches Android apps. *Compare* Compl. ¶¶ 42–46 *with* ¶¶ 81–82. The Court cannot "overlook plaintiff['s] alleged markets," when assessing standing, and by Branch's own allegations, Android app search services and general search services are two different things (as they must be to constitute distinct markets). *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 2022 WL 980791, at *9 (W.D. Tex. Mar. 31, 2022). Because Branch's products "are not substitutes for" Google's products, Branch's allegations "will not suffice to meet the high bar for antitrust standing." *Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106, at *3 (E.D. Tex. July 14, 2005).

While the Complaint quotes an excerpt of a Google document in alleging that Google Search may provide results including in-app content, Branch does not (and cannot) meaningfully respond to Google's quotation of the full version of the document. The full version makes clear that in-app content only appears in Google Search results "when the content corresponds to a web page." Mot. at 13. This is not, as Branch labels it (at 10), "an improper factual dispute," because on a motion to dismiss Google may reference "documents" that "were referred to (in some cases, directly quoted)" by Branch in the Complaint. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 988 F. Supp. 2d 696, 709 (E.D. La. 2013).

Branch also argues (at 8) that it is not necessary for Google to compete in the Android app search market, so long as Branch does. This is incorrect. As a non-participant in Branch's bespoke "Android app search services" market, Google's alleged conduct necessarily occurred in a different market, and any downstream effects in the Android app search market are insufficient to confer antitrust standing. *Waggoner v. Denbury Onshore, LLC*, 612 F. App'x 734, 738 (5th Cir. 2015).[3]

**Android App Distribution.** Branch does not plausibly allege that it offers (or plans to offer) a product, like an app store, from which consumers can obtain an Android app. Branch argues (at 20) that Google "redefined" the Android app distribution market as exclusively app stores, but it was Branch whose Complaint alleged (at ¶ 101) and argued (at 20) that this market "is that in which consumers may obtain apps" (emphasis added). Branch alleges that consumers can search for and find Android apps using Discovery, but also (at ¶ 117) "users whose phones are

---

[3] Branch argues (at 4) that it was "excluded from the Android app search services market," but Branch's own allegations (at Compl. ¶¶ 17, 69) are that "Samsung implement[ed] . . . a . . . version of Discovery Search," and that Branch "inten[ded] to enter this market at greater scale," not that it was excluded entirely. *See also United States v. Google LLC*, 747 F. Supp. 3d at 105 ("Samsung eventually did preinstall Discovery on certain devices").

5

equipped with Branch Discovery Search may obtain apps through multiple distribution channels, including competitive direct downloading"—i.e., downloading directly from the app developer, not directly from Discovery—"or through competing non-Google app stores." Branch does not allege that Android apps can be "obtained," i.e., directly downloaded, within Discovery.

**Search Advertising and Search Text Advertising.** Branch does not plausibly allege that it competes in the search advertising market or the search text advertising submarket.[4] Just two paragraphs in the Complaint (¶¶ 50, 139) make conclusory statements about Branch's ability to sell ads on Discovery. These allegations cannot survive a motion to dismiss. Branch cites several other paragraphs (¶¶ 22–24), but a review of these paragraphs reveals that they are without any substantive content describing Branch's search advertising or search text advertising platform.

## II.    No Exception to the Market Participant Rule Applies.

Perhaps recognizing that it cannot meet the demands of the market participant rule, Branch dedicates much of its brief (at 12–14, 18–22, 24) to arguing that it is exempt from those demands. But "allegations of consequential harm resulting from a violation of the antitrust laws," even when "buttressed by an allegation of intent to harm" do not satisfy Branch's burden to plead antitrust standing. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983) ("*AGC*"). The "narrow exception" that this circuit has recognized to the market participant rule is "for parties whose injuries are 'inextricably intertwined' with the injuries of market participants." *Hughes*, 2000 WL 34004261, at *9 n.10 (citation omitted). Branch's efforts to expand that exception have no basis in law and should be rejected.

---

[4] Branch asserts (at 22) that "Google does not dispute that Branch sufficiently pleaded antitrust liability and standing in the search advertising market." That is wrong given Google's clear statements (like Mot. at 6) that "Branch's Complaint fails because Branch does not adequately allege antitrust standing in any of the four markets in which it alleges that it competes."

6

**Section I and State Law Claims.** Branch argues (at 4, 7–8) that market participant status is not necessary for Section 1 Sherman Act and state antitrust claims. Not so. "Antitrust injury must be established for the plaintiff to have standing under section 1 . . . of the Sherman Act." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 319 (5th Cir. 2009). State antitrust laws demand the same. Tex. Bus. & Com. Code § 15.04 (Texas and federal antitrust law are to be considered "in harmony"); *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (Cartwright Act analysis "mirrors the analysis under federal law"). Branch observes (at 29–30) that California's Cartwright Act sweeps more broadly than the Sherman Act, but the only effect of that increased breadth is to encompass indirect purchasers—a status that Branch has never claimed in any relevant market. Cartwright Act plaintiffs are otherwise held to the same antitrust standing requirements. *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1085-93 (N.D. Cal. 2007) (dismissing Cartwright Act claims for failure to plead antitrust standing under *AGC*).

**Direct Target.** Branch claims (at 12–13, 21–22) it is entitled to antitrust standing in the alleged general search services, Android app search services, and Android app distribution markets because Branch allegedly was a "direct target" of Google's allegedly anticompetitive conduct. Although Branch cites several cases in which conduct directed towards the plaintiff was relevant, none of those plaintiffs established antitrust standing based on targeted conduct alone.[5] *Sanger* was a nascent competitor case in which the court discussed evidence that the defendant viewed the competitor as a threat *after* the court had already concluded that competitor had met its burden to show it was prepared to enter the market. 802 F.3d at 740–41. The plaintiff in *Tessera* was a

---

[5] Whether Discovery Search could have delivered results from Samsung's Galaxy Store (Opp. at 21) is irrelevant because Branch does not allege that it was targeted for providing an outlet for Samsung's app store or that conduct directed toward Branch injured Samsung, let alone that such conduct and injury were inextricably intertwined.

7

licensor to the defendant's competitors, which closely linked its injuries to the injuries of market participants. 2005 WL 1661106, at *2; *id.* (recognizing that an antitrust plaintiff must "be a member of the market in which the relevant antitrust activity was taking place"). No comparable link is present here. The plaintiffs in Branch's remaining cases were all market participants; targeted conduct had no bearing on antitrust standing. *See Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 984 (5th Cir. 1983); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 699 (4th Cir. 2021); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999).

**Lowering Barriers to Entry.** Branch's assertion (at 19) that Google "reduced Branch's ability to lower entry barriers" in the general search and Android app distribution markets cannot establish antitrust standing. Branch gleans this standing theory from *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007). *Novell* presented unique circumstances in which "there was no better situated party to bring the antitrust claims because Novell 'was one of the few private plaintiffs whose claims . . . [were] neither time-barred nor too tenuous to support antitrust standing.'" *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 992 (N.D. Cal. 2010) (quoting *Novell*, 505 F.3d at 319). Here, Branch does not argue that there are no other parties that can bring lawsuits against Google. Rather, the Complaint cites (at ¶¶ 19, 108, 189) various lawsuits brought against Google for similar conduct. Moreover, unlike in *Novell*, Branch does not challenge an anticompetitive practice that, if lifted, would reduce barriers to entry for other competitors. *See Novell*, 505 F.3d at 317. As alleged, "[i]f anything, increased use of [Discovery Search] will divert users from *all* general search engines [and app stores], not just Google [and the Play Store]." *Fotobom*, 719 F. Supp. 3d at 47 (distinguishing *Novell*).

### III.    Branch's Unlawful Tying Claims Fail.

Nothing in Branch's opposition saves its unlawful tying claims. Instead, it asserts first that it adequately defined a market for Android application search services. That argument still fails

8

for the reasons explained above. *See supra* Section II. Google *accepted* Branch's defined markets, but by those same allegations Branch and Google do not compete in any of those markets.

Branch next contends that it has adequately alleged anticompetitive or adverse effects in the Android application search services market.[6] It has not. The conclusory allegations Branch marshals (at 26) in support of this contention are insufficient. Merely reciting words like coercion and exclusion do not rise to the level of plausibility necessary to raise such a claim–Branch's Complaint is bereft of anything more specific than that. And as explained above, Branch's own Complaint reveals that its product was placed on phones by Samsung, *see* ¶¶ 17, 69. These allegations cannot show that Google foreclosed Branch's entry into any relevant market.

## IV. Branch Has Not Shown Google Improperly Interfered with Any Prospective Business Relationship.

Branch first argues that it has shown interference with prospective business relations because "a pre-existing business relationship can suffice." (citing *Loco Brands, LCC v. Butler Am., LLC*, 2019 WL 3015046, at *9 (E.D. Tex. Jan 28, 2019)). But *Loco Brands* dealt with an ongoing relationship; the Court there found that the plaintiff had adequately pleaded tortious interference with an existing contract. *Id.* at *3–4. Here, Branch makes no allegation that it has a current ongoing relationship with any OEM or wireless carrier. Instead, Samsung installed a Branch product on a single Samsung device years earlier, and Branch undertook unsuccessful negotiations for future contracts that it now blames on Google. Branch's allegations here are more akin to those cases where courts have rejected "sweeping, nonspecific, and unsupported pronouncements" about "speculative economic relationships" involving "potential customers." *Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861, at *4-5 (E.D. Tex. Sept. 30, 2021); *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*,

---

[6] Branch cites in a parenthetical (at 25) that Google "fail[ed] to contest anticompetitive effect in general search services." Whether any such effect existed is irrelevant—Branch cannot plead that it competes with Google in the general search services market.

9

2014 WL 524076, at *14 (N.D. Cal. Feb. 6, 2014). Nothing Branch alleges comes close to specificity. Nor could it.

Contrary to Branch's assertion (at 28), Google never argued that Branch must have antitrust standing for tortious interference under California or Texas law. Rather the Complaint does not state a claim based on any unlawful acts, antitrust law or not. Even if the Court found Branch to have antitrust standing, Branch's tortious interference claims still fail on the merits. *See Stone v. FINRA*, 694 F. Supp. 3d 774, 790.

Branch also contends (at 29) that Google's arguments about a lack of proximate cause are "a procedurally improper factual dispute." Not so. The dearth of actual alleged facts supporting Branch's contentions about amorphous future business relationships do not come close to showing that, but for Google's alleged improper conduct, Branch would have had any specific contractual arrangements.

Finally, Branch wrongly argues that it adequately alleged damages. As Branch itself repeats, the only allegations it marshals to support this claim are those of lost "business, sales, distribution, revenues, and profits." Opp. at 29. Such conclusory statements are facially and fatally inadequate to show actual damages. *See BHL Boresight v. Geo-Steering Solutions*, 2016 WL 8648927, at *12 (S.D. Tex. Mar. 29, 2016). Branch cannot have alleged improper interference with any prospective business relationship.[7]

## CONCLUSION

For these reasons, the Court should dismiss Branch's Complaint with prejudice.

---

[7] Branch narrows its tortious interference claim now to "Texas and California law," Opp. at 27, from its earlier assertion that it brought the claim under "federal antitrust law, Texas and California antitrust law, and Texas and California common law," Compl. ¶ 372. This narrowing does not salvage Branch's claim.

Dated: May 16, 2025                     Respectfully submitted,

                                                    By: */s/ Melissa R. Smith*
                                                    Melissa R. Smith (Bar #24001351)
                                                    GILLAM & SMITH LLP
                                                    303 S. Washington Avenue
                                                    Marshall, Texas 75670
                                                    Tel: (903) 934-8450
                                                    Fax: (903) 934-9257
                                                    melissa@gillamsmithlaw.com

                                                    WILLIAMS & CONNOLLY LLP
                                                    John E. Schmidtlein
                                                    Benjamin M. Greenblum
                                                    Alexander S. Zolan
                                                    680 Maine Avenue SW
                                                    Washington, DC 20024
                                                    Tel: (202) 434-5000
                                                    Fax: (202) 434-5029

                                                   ROPES & GRAY LLP
                                                   Matthew L. McGinnis
                                                   Prudential Tower
                                                   800 Boylston Street
                                                   Boston, MA 02199
                                                   Tel: (617) 951-7567
                                                   matthew.mcginnis@ropesgray.com

                                                   Adam R. Safadi
                                                   2099 Pennsylvania Avenue NW
                                                   Tel: (202) 508-4717
                                                   adam.safadi@ropesgray.com

                                                   *Counsel to Defendant Google LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 16th day of May, 2025.

／s/ Melissa R. Smith
Melissa R. Smith