UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRANCH METRICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 2:25-cv-00089-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF BRANCH'S SUR-REPLY TO GOOGLE'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. Introduction ...........................................................................................................................1

II. Google Cannot Overcome Branch's Well-Pleaded Standing Allegations .............................2

    A. Branch Has Antitrust Standing in the Android App Search Services Market ..................2

    B. Branch Has Antitrust Standing in the General Search Services Market ..........................3

    C. Branch Has Antitrust Standing in the Android App Distribution Market ........................7

    D. Branch Has Antitrust Standing in the Search and Text Advertising Markets ..................8

III. Google's Arguments on Branch's Tying Claims Are Meritless ............................................9

IV. Branch Plausibly Alleged Tortious Interference ..................................................................10

I.      Introduction

Google's Reply (Dkt. 39) is silent on the detailed allegations summarized in Branch's Response (Dkt. 37) that Google "intentionally and specifically targeted Branch" to "exclude[] it from the Android ecosystem" because of competitive fears. Google believed Branch's Discovery Search offered a "functionality similar to Google Search," "created an alternative access point" that "expands the search experience," was set to become "standard across all Samsung's devices," and Google was (in Samsung's words) "afraid" that Discovery Search would "cannibalize Google's main business" and thus was "buying its way to squelch competitors." Resp. 1-3, 15. So Google set out to "kill," "stop," "push back on," "discontinue," and "remov[e] [Branch's] functionality" from all Android devices through unlawful distribution agreements that barred Discovery Search as prohibited "Alternative Search Services," because Google believed it is "*substantially similar to Google Search*." *Id*. at 2-4, 10, 12, 15, 21-23 (all emphasis added). Google foreclosed Branch to "own all search on [mobile] device[s]." *Id.* at 2.

Yet Google continues to insist that Branch is not a competitor in any respect in any markets and lacks standing to assert any antitrust claims. That makes it all the more conspicuous that Google failed to answer the question expressly posed in Branch's response: "If Branch was not a competitive threat to Google, as Google claims now, then why did Google specifically and intentionally target Branch and foreclose it from getting distribution with OEMs and carriers?" Resp. at 3. Google has no answer.

Instead, Google's Reply engages in misdirection by arguing about standing for "downstream" effects and "indirect" purchasers — concepts that have no bearing on this case. This is not a case with a remote plaintiff asserting an antitrust claim for indirect and unintended effects of the defendant's conduct. Rather, Google targeted Branch as a competitive threat and abused its monopoly power to foreclose Discovery Search specifically from getting distribution, a "textbook

1

antitrust injury," *Pulse Network, LLC v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022). The balance of Google's arguments are procedurally improper factual assertions that deny the truth of Branch's allegations and cannot be "resolved through motions to dismiss." *Dexon Comp. v. Cisco Sys.*, 2023 WL 2730656, at *27 (E.D. Tex. Mar. 31, 2023).

Google does not genuinely contest that Branch adequately alleged that Google foreclosed Discovery Search from getting distribution in the Android ecosystem. Instead, Google in effect argues that there is nothing Branch can do about it, and Google can exclude Branch with antitrust impunity based on Google's self-serving, formalistic, and fact-based contentions about market definitions, product characteristics, and the extent to which Google and Branch compete in those markets. But Google expressly recognized Branch's competition; Branch cannot be placed outside of *all* relevant markets; Branch's exclusion from the Android ecosystem is "classical" antitrust injury, *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 306 (5th Cir. 1997); and Google's disputes are evidentiary matters for fact discovery, experts, and the jury.

## II. Google Cannot Overcome Branch's Well-Pleaded Standing Allegations

### A. Branch Has Antitrust Standing in the Android App Search Services Market

Google admits Branch competes and "felt effects" in this market. And thus Google's sole argument is that *Google* does not compete in this market. That is not true factually, but does not matter legally in any event for Counts 1-3, 10-11, and 13-14. *See* Resp. at 7-8. These claims assert that Google used its monopoly power in *other* markets (general search services and Android app distribution) to restrain competition in *this* market. Google's motion missed this entirely, *see id.* at 4, 7-8, and its belated and only rebuttal (Reply at 5) is that "downstream effects" from one market cannot confer antitrust standing, citing *Waggoner v. Denbury Onshore, LLC*, 612 Fed. App'x 734, 739 (5th Cir. 2015). But that is a red herring. Branch's claims are not for indirect, attenuated, "downstream" effects; they are for (among other unreasonable restraints) unlawful tying that

2

excluded Branch entirely from the tied Android app search services market. Google's reliance on *Waggoner* is therefore misplaced, as that royalty underpayment case did not involve tying claims, exclusion from a market, or any cognizable antitrust conduct. *See* Resp. at 16 n.7. Under the law cited in the Response and Reply, Branch's foreclosure from the app search services market through Google's improper use of its market power in the general search and app distribution markets is antitrust injury. Resp. at 8; *Fotobom Media, Inc. v. Google*, 719 F. Supp. 3d 33, 50-51 (D.D.C. 2024) (upholding tying claim where, as alleged here, Google used Google Play, Google Search, and its MADA contracts to unlawfully tie and cause anticompetitive effects in another market).

As to Branch's monopolization claims involving this market (Counts 4 and 5), Google does not dispute that Branch alleged Google's products "search and return results of deep-linked apps and app content across multiple verticals in response to user queries," or that Google "reconfigured Google Search and its related product offerings to directly compete with Discovery Search's technology by also providing developers and advertisers the options of sending Google Search users either to in-app content or to their websites." Resp. at 9-10. This is dispositive under Branch's market definition. Compl. ¶ 54. In continuing its market-definition disputes, Google now says its app content must "correspond[] to a web page," but that does not matter under Branch's market definition, which contains no such limitation. *Compare* Resp. at 10, *with* Reply at 5. And regardless, the Court cannot — despite Google's insistence — "look behind allegations at the pleading stage to explore facts concerning the market definition." *OGD Equipment Co. v. Overhead Door Corp.*, 2019 WL 5390590, at *3 (E.D. Tex. Aug. 7, 2019).

**B.    Branch Has Antitrust Standing in the General Search Services Market**

Google's continued claim that "Discovery is [not] a general search engine" is irrelevant, Reply at 2, because Branch does not need to be a general search engine to have antitrust injury in this market. *See* Resp. at 13 (collecting cases); *see, e.g., Am. Cent. E. Tex. Gas Co. v. Union Pac.*

3

*Res. Grp., Inc.*, 93 Fed. App'x 1, 7 (5th Cir. 2004) (rejecting standing challenge predicated on whether plaintiff offers the same type of product as the defendant because plaintiff's product "adds to the market"). Neither *U.S. v. Google*, 747 F. Supp. 3d 1, 170 (D.D.C. 2024), nor *Fotobom*, 719 F. Supp. 3d at 40 (Reply at 2-3), dictate a different result. Branch's antitrust standing was not at issue in *U.S. v. Google*, and Branch cannot be bound by it as a nonparty (though Google can and will be with respect to its findings that Google targeted Branch, that Google's conduct was anticompetitive and unlawful, and that Google's conduct had a "chilling effect" on Branch's efforts to gain distribution with OEMs and carriers, and lacked legitimate business justifications). *Compare* Resp. at 16-17, *with* Reply at 3 (failing to dispute). *Fotobom* rested on pleading deficiencies that are absent here. *Compare* Resp. at 19-20, *with* Reply at 3 (failing to dispute).

Critically, the Reply still does not meaningfully address Branch's detailed allegations that Discovery Search competes with Google in the general search services market — including, for example, that it "allow[s] consumers to find responsive information on the internet by entering keyword queries" and offers (as Google recognized) "functionality similar to Google Search"; that Google was "afraid" that it would "cannibalize" Google Search's business; and that Google targeted it using the same contract provisions Google used to injure other market participants like Microsoft Bing. Resp. at 14-16.[1] Google's claim that this is not enough — because of how *Google now* characterizes this market and Branch's participation in it — is not a proper challenge. *See Games People Play, Inc. v. Nike, Inc.*, 2015 WL 13657672, at *2 (E.D. Tex. Feb. 13, 2015).

The Reply's new challenge to Branch's nascent competitor allegations fare no better. Google claims that Branch does not allege an intent or preparedness to enter the market, but that

---

[1] *Greenflight Venture* is inapt. There, the plaintiff (offering reverse phone number look ups) lacked standing in general search services because it "concede[d] that it is not a market participant" and did not allege "any other basis for standing." 2024 WL 4723121, at *3-4 (S.D. Fla. Nov. 8, 2024).

4

ignores robust allegations that do exactly that. *See* Resp. at 14-17. Branch does not merely allege that Discovery Search is "connected to the internet" or that two companies "expressed interest" in it, as Google claims. Reply at 3. Rather, Branch alleged at length its "ambitions to enter the market," and — just like the plaintiff in *Sanger* — that it was "prepared to enter" the market "[a]bsent the exclusive dealing arrangement that [Branch] contends prevented it." *Sanger Ins. Agency v. HUB Int'l*, 802 F.3d 732, 740 (5th Cir. 2015).

Google's argument that Branch must allege it has a "comprehensive search index" on par with Google is also meritless. Reply at 3-4. Branch need not allege the products are "perfectly fungible." *OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, 2017 WL 1213629, at *4 (E.D. Tex. Apr. 3, 2017); *Lucasys Inc. v. Powerplan, Inc.*, 576 F. Supp. 3d 1331, 1344 (N.D. Ga. 2021) (applying Fifth Circuit law: no authority "*even suggesting*" that "plaintiff must have a complete substitute product"). It need only allege they are "reasonably interchangeable." *OrthoAccel*, 2017 WL 1213629, at *4. Whether they are "is precisely the type of factual dispute" that must await the merits. *Silicon Servs. v. Applied Materials*, 2007 WL 9701128, at *4 (W.D. Tex. Feb. 16, 2007).

Google's new arguments as to Branch's additional allegations in this market — that Google directly targeted Branch and that Branch lowered barriers for other entrants — are both waived for not being adequately addressed in the motion, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014), and without merit. That Branch's allegations give it standing for multiple independent reasons demonstrates the *strength* of its allegations (and the *unlawfulness* of Google's conduct), not the other way around.

Regardless, Google wrongly stakes its arguments on issues of downstream "consequential harm" based on out-of-context quotations from *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*") and *Hughes v. Tobacco Inst.*, 2000

5

WL 34004261 (E.D. Tex. May 5, 2000). *AGC* held that a labor union — which "will frequently not be part of the class the Sherman Act was designated to protect" — had not pleaded antitrust injury based on breach of a collective bargaining agreement because its harm was "unspecified," "indirect" (as compared to the excluded union contractors it represented), and based on a "vaguely defined" chain of causation. 459 U.S. at 526-27, 535-46. *Hughes* held that smokers suing tobacco manufacturers for conspiring to suppress research did not suffer antitrust injury because they are indirect purchasers. 2000 WL 34004261, at *8-9. In stark contrast, Branch alleges direct, concrete, and "textbook" antitrust injury: exclusion from the market directly caused by Google's express targeting of Branch. The adequacy of Branch's allegations is confirmed by *Pulse*, 30 F.4th at 491 ("an excluded competitor . . . suffers a distinct injury if it is prevented from selling its product"), and *Doctor's Hospital*, 123 F.3d at 306 ("standing should not become the tail wagging the dog in 'classical' antitrust cases such as this one by an allegedly excluded competitor"), neither of which the Reply addresses. This case has *nothing* to do with indirect purchasers or remote injuries.

As to Google directly targeting Branch for exclusion, Google argues a plaintiff cannot "establish[] antitrust standing based on targeted conduct" unless the plaintiff alleges it is a competitor, nascent competitor, perceived competitor, or "closely linked its injuries to the injuries of market participants." Reply at 12. This is doubly wrong. First, Google's own case contradicts it. *See Tessera, Inc. v. Micron Tech., Inc.*, 2005 WL 1661106, at *3-4 (E.D. Tex. July 14, 2005) (standing even though plaintiff's product was "*not* reasonably interchangeable" because "it was a target of the alleged conspiracy"). Second, Branch has alleged not just one, *but all four*, of Google's requirements: Branch alleged it is a competitor or nascent competitor; that Google and third parties perceived Branch as a competitor; that Branch's exclusion hurt distributors, competitors, and consumers; and that — as with other market participants like Microsoft Bing —

6

Branch was targeted by Google for offering an "Alternative Search Service" that Google deemed "substantially similar to Google Search." *E.g.*, Resp. at 13-18; Compl. ¶¶ 214-17, 226-32.

As to Branch lowering barriers to entry for other market participants, Google claims this does not confer standing on Branch absent a showing it was "one of the few private plaintiffs whose claims . . . [were] neither time-barred nor too tenuous to support antitrust standing." Reply at 8 (citing *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007)). But Branch adequately alleged proper plaintiff status and Google does not address it. *See* Resp. at 24-25. That Google's unlawful conduct has permeated so many different markets to subject Google to other lawsuits (Reply at 8) and to other claims from Branch does not render Branch an improper plaintiff as to the harm directed at Branch, that Branch alone suffered, and for which Branch alone can recover. What matters here is that Branch was prevented from reducing barriers to entry. Resp. at 19.

Finally, Google's footnoted cases, cited for the point that courts "regularly dismiss antitrust complaints on standing grounds," Reply at 2 n.2, either support Branch or are inapposite.[2]

### C. Branch Has Antitrust Standing in the Android App Distribution Market

Google's Reply does not challenge Branch's allegations that (a) Branch is at least a nascent competitor in this market; (b) Google targeted Branch as a competitive threat in this market to protect its Google Play Store monopoly; and (c) Google prevented Branch from lowering barriers

---

[2] *Delta Produce, L.P. v. H.E. Butt Grocery Co.* cuts *against* dismissal because that plaintiff had antitrust standing where it alleged the defendant "proximately caused [its] injury when it prohibited [plaintiff] from selling [its product]" — precisely what Branch alleges. 2013 WL 12121118, at *3 (W.D. Tex. Jan. 17, 2013); Resp. at 13-16. Google's other cases have no legal or factual relevance. *See Anderson v. 21st Mortg. Corp.*, 2016 WL 11582928, at *6 (W.D. Tex. Sept. 26, 2016) (no antitrust injury because "antitrust laws do not extend protection to employees"); *Navo S. Dev. Partners, Ltd. v. Denton Cnty. Elec. Co-op., Inc.*, 669 F. Supp. 2d 747, 754-56 (E.D. Tex. 2009) (that plaintiff developer had to pay infrastructure costs and grant title to defendant electricity provider are not antitrust injury because they are not a "violation of the antitrust laws"); *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992) (defendant's purchase of plaintiff's stock and proposed merger would *benefit* the plaintiff, not cause antitrust injury).

to entry in this market. *Compare* Resp. at 20-21, *with* Reply at 5-6.[3] These are all adequate allegations and legal grounds to establish antitrust injury and to deny Google's motion.

Google's only argument again concerns market definition. It concedes this market includes any means by which "consumers may obtain apps," Reply at 5, just as Branch alleged. Compl. ¶ 101. But Google now quibbles that "obtain" must mean "directly downloaded" because a separate allegation (¶ 117) states that one of the "multiple distribution channels" where a user "may obtain apps" is "direct downloading." Reply at 6 (inserting language into Branch's allegation). It is not clear what Google means by this or how it claims Branch lacked that functionality, *cf.* Compl. ¶ 50 & Fig. 4, but such semantics are plainly matters of fact. As alleged, this market "includes *all channels by which Android apps on mobile devices may be distributed to consumers*." *Id.* ¶ 101. And contrary to what Google lets on, Branch alleged that Discovery Search enables searching and discovering apps not present on a device, and then obtaining, purchasing, downloading, and installing those apps both directly and through competing app stores using "the mobile device and an internet connection." *Id*. ¶¶ 16, 46, 50, 117-30, 222, Figs 4 & 6.

### D.     Branch Has Antitrust Standing in the Search and Text Advertising Markets

Google all but concedes that it failed to adequately brief any substantive challenge to Branch's claims in the search and text advertising markets. *See* Reply at 6 n.4. Its only (belated) argument is that Branch's allegations are "conclusory." *Id*. at 6. But that is wrong. The Motion never addressed these allegations, and the Reply still fails to address them. *Compare* Resp. at 23 (citing Compl. ¶¶ 8, 16, 17, 42, 69, 70, 50, 87, 117, 121-22, 134, 139 & Fig. 4), *with* Reply at 6 (limiting Branch's allegations to ¶¶ 50, 22-24, 139 and failing to explain how they are conclusory).

---

[3] Google's new argument (at n.5) that Branch did not allege it was "targeted for providing an outlet for Samsung's app store" or that Google injured that competing app store is simply wrong. *See, e.g.*, Compl., ¶ 119 ("Galaxy Store"), Fig. 5 ("Galaxy Store"), ¶¶ 128-130 (competing app stores).

8

**III.     Google's Arguments on Branch's Tying Claims Are Meritless**

Google says that Branch's allegations show that "Branch and Google do not compete" in any of the markets defined in the Complaint. Reply at 9. To the contrary, Branch clearly alleged that it competes with Google in all four of the relevant product markets, *see* Compl. ¶¶ 65-70, 85-100, 117-30, 139, and Resp. at 2, 9-10, 14-16, 20-21, 22-24. Google's arguments to the contrary are (incorrect) factual assertions not appropriate for resolution on a motion to dismiss.

Google conceded in its Motion that *Branch* "felt effects" in the alleged tied product market (app search), Mot. at 15; Resp. at 7, 25-26, and disputed only that "*Google* competes in this bespoke alleged market," Mot. at 12. But it does not matter ultimately that Google disagrees that it competes in the app search market for Branch's tying claims to succeed, especially at this stage. The purpose of tying claims is to prevent a firm with "appreciable economic power" in one market (the tying product market) from restraining competition in *another* market (the tied product market). *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 462 (1992); *Miller v. Granados*, 529 F.2d 393, 397-98 (5th Cir. 1976) (tying denies access to the tied market).

Google does not dispute that it has the required monopoly power in each of the alleged tying product markets (general search and app distribution), and Google concedes that Branch "felt effects" of the challenged conduct *at least* in the app search market. Mot. at 15; Compl. ¶¶ 255-64 (Count 2); *id.* ¶¶ 265-74 (Count 3). That is sufficient to defeat the Motion as to both Counts.

Google also repeats that Branch did not adequately allege anticompetitive effects and calls Branch's allegations "conclusory." Reply at 9. But there is nothing "conclusory" about Branch's *three pages* of allegations. Resp. at 26; Compl. ¶¶ 219-25 (describing specific effects on competitors, OEMs, app distributors and developers, and consumers); *see also id.* ¶¶ 142-53, 158-60, 219-32, 258, 263, 273 (excluding competitors and reducing output, innovation, and choice).

Finally, Google argues that Branch "cannot show that Google foreclosed Branch's entry"

9

because Branch's "product was placed on phones by Samsung." Reply at 9. That, too, is meritless. Google ignores that Branch alleged it had only a "limited integration" with Samsung precisely *because* Google specifically targeted and foreclosed Branch from gaining *broader* and then *any* distribution with Samsung (and others), *see* Resp. at 25 — what Google internally feared as the threat of Discovery Search becoming "standard across all of Samsung's devices," Compl. ¶ 27.

### IV.  Branch Plausibly Alleged Tortious Interference

Branch's allegations of tortious interference are more than sufficient under Google's cited cases. Branch "described the specifics of a proposed agreement that never came to fruition," *Stone v. FINRA*, 694 F. Supp. 3d 774, 789 (E.D. Tex. 2023), including allegations of its pre-existing business relationship with Samsung, which desired Discovery Search "to become standard across all of Samsung's upcoming devices," and its negotiations with AT&T and other OEMs and carriers. Resp. at 5, 27-28. This case is thus nothing like *Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861, at *4-5 (E.D. Tex. Sept. 30, 2021), where the plaintiff alleged only that it "*may* have entered into a business relationship with *unnamed* customers or business partners."

Similarly meritless is Google's assertion that Branch did not have an "ongoing" relationship with Samsung because it "installed a Branch product on a single Samsung device years earlier," Reply at 9. That contradicts Branch's allegations of a "limited integration on Samsung mobile *devices*, and the plans to expand that integration," Compl. ¶ 369; Resp. at 27-28; Reply at 5 (admitting "Samsung eventually did preinstall Discovery on certain devices"). It also does not matter whether the relationship concerned one device or one million, because Branch alleged "a reasonable probability that [it] would have entered into a business relationship" but for Google's unlawful conduct. *Stone*, 694 F. Supp. 3d at 789; *Loco Brands v. Bulter AM.*, 2019 WL 3015046, at *9 (E.D. Tex. Jan. 28, 2019) (plaintiff may plead "existing relationship," not "ongoing" one).

The Court should deny Google's motion to dismiss.

| | |
|---|---|
| Dated: May 23, 2025 | Respectfully submitted,<br><br>*/s/ Alex Kaplan*<br>Neal Manne<br>Alex Kaplan<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston TX 77002<br>Tel: (713) 651-9366<br>Fax: (713) 654-6666<br>nmanne@susmangodfrey.com<br>akaplan@susmangodfrey.com<br><br>John Schiltz<br>Danielle Nicholson<br>SUSMAN GODFREY L.L.P.<br>401 Union Street, Suite 3000<br>Seattle, WA 98101<br>Tel: (206) 505-3841<br>Fax: (206) 516-3883<br>jschiltz@susmangodfrey.com<br>dnicholson@susmangodfrey.com<br><br>Zachary B. Savage<br>SUSMAN GODFREY L.L.P.<br>One Manhattan West<br>New York, NY 10001-8602<br>Tel: (212) 336-8330<br>Fax: (212) 336-8340<br>zsavage@susmangodfrey.com<br><br>Of Counsel:<br>Claire Abernathy Henry<br>State Bar No. 24053063<br>claire@millerfairhenry.com<br>MILLER FAIR HENRY, PLLC<br>1507 Bill Owens Parkway<br>Longview, Texas 75604<br>(903) 757-6400 (telephone)<br>(903) 757-2323 (facsimile)<br><br>Steven C. Holtzman<br>20 Hillcrest Road<br>Berkeley CA 94705<br>(510) 333-4612<br>Sholtzman10@outlook.com<br><br>**Counsel for Branch Metrics, Inc.** |

11

## **CERTIFICATE OF SERVICE**

This is to certify that on May 23, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

>                             */s/ Alex Kaplan*
>                             Alex Kaplan
>                             *Counsel for Plaintiff*