# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BRANCH METRICS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:25-CV-00089-JRG |
| GOOGLE LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## ORDER REGARDING E-DISCOVERY

The Court ORDERS as follows:

### I. GENERAL PROVISIONS

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified in the Court's discretion or by agreement of the parties. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court for it to resolve.

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Absent agreement of the parties or further order of this Court, the following parameters shall apply to producing documents or ESI:

    (a) <u>TIFF Plus Text Productions.</u> Except as stated otherwise below, ESI being produced by a producing party shall be converted to 300 dpi, single-page, black-and-white

TIFF images using CCITT Group IV compression. Where color images are required by this Order, the images shall be in the form of .JPG images. Each page must be branded with a unique Bates number (or alternative document control number), which must not be an overlay of the image. Unless otherwise agreed by the parties, the TIFF images must be produced electronically by secure FTP, on optical media, or USB hard drive, accompanied by (1) an image cross reference file in Opticon™ format (.OPT) that associates each Bates number with its corresponding single-page TIFF image file (or JPG image file for color images); (2) a "data load file" (.DAT) containing each of the applicable metadata and bibliographic fields described in Appendix A;

  (b) Each volume directory should contain four (4) subdirectories (each may contain sub-directories with no more than 10,000 files per directory): (1) native files; (2) extracted/OCR text files; (3) Images; and (4) Loadfiles to contain the .OPT and. .DAT files.

  (c) Documents produced on paper must be organized by custodian and maintained in the order in which they appear in the files of the custodian.

  (d) Email.

   i. If a producing party redacts any part of an email before producing it, OCR text may be provided in place of extracted text.

   ii. Email attachments must be processed and produced as though they were separate documents, and the text load file must include fields in which a producing party identifies, for each email, and its attachments the BegAttach and EndAttach of the family range.

   iii. Hidden text (e.g. track changes, hidden columns, hidden rows, hidden slides, hidden worksheets, mark-ups, notes) shall be

expanded and rendered in the extracted text file.

(e) Word, WordPerfect, Google Docs and PDF files.

    i. For Word, WordPerfect, Google Docs, and PDF files, the text load file must contain the full extracted text from the document, unless the document has been redacted during privilege review, in which case the load file may contain OCR text.

    ii. For Word, WordPerfect, Google Docs, and PDF files that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated based on how the document appears when first opened using view settings contained in the file.

(f) Microsoft PowerPoint and other presentation files ("Presentations") must be processed and produced as full color, half page, JPEG images with one slide per page. Any presenter notes must appear below each slide. If Presentations contain privileged text that must be redacted before production, the producing party will image the redacted files and provide OCR text for the files.

(g) Microsoft Excel and other data spreadsheet files ("Spreadsheets") must also be produced in native format in the natives folder on the production media. If Spreadsheets contain privileged text that must be redacted before production, a producing party will image the redacted spreadsheets showing all non-privileged hidden columns and provide OCR text for the files, to the extent possible.

(h) With respect to any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., a meet-and-confer should be scheduled to determine a reasonably usable form for the production. If the requesting and producing

parties have not agreed on a production format for the ESI prior to the production, then Rule 34(b)(2)(E)(iii) shall not apply to the production.

5. The requesting party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request color .JPG images.

6. Except as stated above, a producing party need not produce the same ESI in more than one form.

7. <u>Document Families</u>. A producing party may withhold small image files or extracted embedded files that are unresponsive or irrelevant, even if other documents in the same document family are responsive. A producing party shall not withhold documents on a claim of privilege merely because other documents in the same document family are privileged.

8. Hyperlinks are not attachments. Linked content will only be collected, reviewed and produced if (a) it independently meets the collection and search criteria for this action, (b) the linked content is within the possession, custody, or control of the producing party, (c) it is responsive and not privileged, and (d) it is not otherwise subject to any other limitations in this Order.

## II. EMAIL DISCOVERY

9. To the extent reproductions of documents (including email) produced in a prior action are made in this action, such reproductions are not subject to the requirements and limits of this ESI Order and nothing in this ESI Order is intended to limit or prejudice either side's right to seek discovery of relevant email or electronic correspondence previously collected and produced in another action. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this Court, shall not include email or other forms of electronic correspondence (collectively, "email"). To obtain email, the parties must propound specific email production requests that are subject to the limitations set forth below.

10. Email production requests shall be phased to occur timely after the parties have exchanged initial disclosures, and after each party has disclosed a specific listing of its fifteen likely most significant email custodians (whether a current or former agent, employee, or representative of a party) in view of the pleaded claims and defenses. Each party shall serve on the other party the foregoing list within 14 calendar days of entry of this Order. Each requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. For the avoidance of doubt, such depositions and discovery requests shall not be counted against the requesting party's deposition time or discovery requests. The court may allow additional discovery upon a showing of good cause.

11. Email production requests shall identify the custodian, search terms, and time frame of email sought. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its email production requests to a total of eight custodians per producing party for all such requests. If there are specific disputes among the parties related to custodians, search terms, or time periods for specific custodians, the parties will produce documents from other, non-disputed custodians while such disputes are resolved. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

12. Each requesting party shall limit its email production requests to a total of ten search terms per custodian per side. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer search terms per

custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.

13. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as, by way of inexhaustive example, the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are synonyms or variants of the same word. For the avoidance of doubt, a search string structured as "WORD and (WORD OR WORD OR WORD)" (e.g., "computer and (system or "hard drive" or memory)") is a conjunctive combination and shall count as a single search term regardless of whether the alternative words following the conjunctive "and" are synonyms or variants of one another. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. If a party objects to a search term on the ground that it would be too burdensome to produce all responsive documents that hit on that term, the party shall produce a hit count to the requesting party.

14. Once the parties agree to search terms for a custodian, the producing party shall produce all responsive emails that the agreed search terms hit on, with the exception of those withheld on privilege grounds, as expeditiously as possible and no later than the substantial completion deadline, absent a showing of good cause or agreement of the parties. Email files with attachments should be produced with attachments immediately following their respective parent

email and the entire production range for the email and its respective attachments also provided in the metadata (using, e.g., begattach and endattach fields) to the extent reasonably practical to do so and not unduly burdensome.

15. <u>Technology Assisted Review</u>. Nothing in this Agreement shall be construed or interpreted as precluding a producing party from performing review and analysis, including the use of Technology Assisted Review ("TAR"), to determine if a document is in fact relevant to the requesting party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not relevant to the requesting party's request, or is privileged or otherwise protected, may be withheld. If any party wishes to use TAR to limit the documents that it produces, it shall notify the requesting party and provide it a proposed TAR protocol. The requesting and producing parties shall then meet and confer in an attempt to negotiate an agreed-upon protocol.

16. <u>Filtering</u>. Each party will use its best efforts to filter out system files, unprocessable files, non-human generated files, application executable files, Bin files, PSTs, archive files, P7S files, video media files and digital audio files through a commercially recognized hash identification process or other filtering methods. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

17. <u>Deduplication and Threading</u>. A party may de-duplicate responsive ESI across custodians subject to the following restrictions. De-duplication must be done in a way that (1) preserves information on blind copy (bcc) recipients; and (2) ensures that an email and its attachment(s) are produced together. In an email thread, a party may elect to produce only the most inclusive responsive email in the thread as long as doing so still satisfies (1) and (2) in the preceding sentence. For the purpose of this paragraph, an attachment is a file associated with an

email for retention and storage as a single message unit. Further, nothing in this paragraph prevents a party from asserting that a lesser included email must be produced on the basis that the most inclusive email omits information from the lesser included email.

### III. PRESERVATION

18. <u>No Discovery of Material Not Required to Be Preserved.</u> Absent a showing of extraordinary circumstances, the parties shall not seek discovery of items that need not be preserved pursuant to the paragraphs below. Such items listed as not reasonably accessible below need not be searched for, produced, or identified on a privilege log pursuant to Rule 26(b)(5).

19. In addition, the following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

    (a)    backup systems and/or tapes used for disaster recovery; and

    (b)    systems no longer in use that cannot be accessed.

20. <u>ESI That Is Not Reasonably Accessible.</u> The following categories of ESI are not reasonably accessible or not proportional to the needs of this litigation, and need not be preserved for this litigation:

    (a)    Information from hard drives, handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

    (b)    Logs of calls made from cellular phone;

    (c)    Voicemail messages;

    (d)    Video and audio recordings;

    (e)    Interim versions of Microsoft Office documents (e.g., Word, PowerPoint,

Excel) and similar Google documents (e.g., Docs, Slides, Sheets) that are automatically saved by a computer system, and not independently saved by the user;

(f) Deleted, slack, fragmented, or other data accessible only by forensics (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

(g) Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(h) Online access data such as temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(i) Dynamic fields or databases or log files that are not retained in the usual course of business;

(j) Data that is not accessible through the operating system or software installed on a device; and

(k) Server, system, or network logs.

21. Nothing in this Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of documents or ESI are not reasonably accessible.

22. By preserving documents and ESI for the purpose of this litigation, the parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## IV. **MISCELLANEOUS**

23. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

24. Except as expressly stated, nothing in this order affects the parties' discovery

obligations under the Federal or Local rules.

**So ORDERED and SIGNED this 31st day of July, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# APPENDIX A

# PRODUCTION METADATA

Each of the metadata and coding fields set forth below that can be extracted at the time of collection and processing without undue burden or cost shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document at the time of collection and processing without undue burden or cost, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number |
| ENDBATES | Ending Bates number |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | All custodians, de-duped and primary, that are associated with a file |
| SUBJECT | Subject line of email |
| TITLE | For emails, the subject line<br><br>For non-emails, the File Name |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |

| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Original composer of document or sender of email message. |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Link to native file (native files only) |
| TEXTLINK | Link to text files |