# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BRANCH METRICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 2:25-cv-00089-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF BRANCH METRICS, INC.'S MOTION TO COMPEL**

Plaintiff Branch Metrics, Inc. ("Branch") moves to compel Google to produce the reports of seven experts in the government's antitrust case, *U.S. v. Google*, No. 1:20-cv-03010-APM (D.D.C.) (the "DOJ Search" case), establishing that Google illegally monopolized certain technology markets at issue in this case based on the same anticompetitive conduct at issue here.

Just last year, another court in this District ordered Google to produce expert reports from a second government antitrust action regarding advertising technology. *Texas v. Google*, No. 4:20-cv-957-SDJ, Dkt. 418 at 2-7 (E.D. Tex. Apr. 24, 2024). The result should be the same here.

The DOJ Search reports are relevant. They address the same technology markets, the same anticompetitive conduct, and the same anticompetitive effects at issue in this case. There is no genuine burden from their production, particularly because Branch has agreed to take on Google's obligations under this Court's Protective Order (Dkt. 45 ¶ 6) to provide notice to implicated third parties — even though Google, not Branch, possesses the materials. And, in any event, any burden is significantly outweighed by the relevance of the materials and their benefit to the case. Production of these expert reports will provide highly relevant information, streamline discovery, reduce costs, and balance the parties' respective access to the evidence.

In short, production will serve the goal of antitrust policy in this context, a private suit following a government action: "to minimize the burdens of litigation for injured private suitors," like Branch, and "mak[e] available to them all matters previously established by the Government in antitrust actions." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951).

## I.     The Disputed Issue

In 2020, the DOJ, Texas, and nearly every other State filed suit against Google for unlawfully monopolizing three technology markets: general search, search advertising, and search text advertising. *U.S. v. Google*, 747 F. Supp. 3d 1, 33-34 (D.D.C. Aug. 5, 2024). The case centered on Google's exclusionary agreements — including Mobile Application Distribution Agreements

1

(MADAs) and Revenue Share Agreements (RSAs) — with mobile device OEMs and carriers to secure Google's exclusive default status and prohibit distributors from dealing with a broad range of Google's competitors, including Branch. *See, e.g.*, *id*. at 88-181.

After a bench trial, the court held that Google unlawfully monopolized the general search and search text advertising markets; that Google's agreements "are exclusive and have anticompetitive effects," including a "chilling effect" on firms' "consideration of Branch"; and that Google's conduct caused significant anticompetitive effects. *Id.* at 32, 106-181. The court barred Google from using the same "exclusive contract" at issue here, tying the license of Google apps to requirements that exclude competitors like Branch. DOJ Search, Dkt. 1436 at 3-6.

After providing evidence in the DOJ Search case, Branch filed this case against Google. It asserts the same markets at issue in the DOJ Search case, plus two more, *see, e.g.*, Dkt. 1 ("Compl.") ¶¶ 5-9, 54-139, and challenges the same conduct that formed the basis for the court's judgment that Google violated the antitrust laws, *see, e.g.*, *id*. ¶¶ 140-213 & Counts 1-15 (challenging MADAs and RSAs). Branch now seeks discovery of the expert reports from seven experts designated by the government or Google in the DOJ Search case on key issues in the case.

**II.     The Expert Reports Are Relevant and Discoverable**

The expert reports from the DOJ Search case are highly relevant and should be produced. "Congress meant to assist private litigants in utilizing any benefits they might cull from government antitrust actions," *Minnesota Min. & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 317 (1965), and "government proceedings are recognized as a major source of evidence for private parties," *Broussard v. Socony Mobil Oil Co.*, 350 F.2d 346, 353 (5th Cir. 1965). The antitrust laws were designed "to *facilitate* and *expedite* private actions," *Gen. Elec. Co. v. City of San Antonio*, 334 F.2d 480, 486 (5th Cir. 1964), and "to make it easier . . . to recover from defendants" — like Google — "already sued and found guilty by the government of antitrust

2

violations." *City of Burbank v. Gen. Elec. Co.*, 329 F.2d 825, 831 (9th Cir. 1964).[1]

Expert reports from prior actions are regularly ordered produced, including against Google. Last year, in *Texas v. Google*, a Special Master in this District ordered Google to produce "expert reports served by the Department of Justice and Google" in the DOJ's antitrust action against Google in E.D. Va. related to advertising technology — because the Texas case involves "the same allegations" of anticompetitive conduct and "the same Google products and services." No. 4:20-cv-957-SDJ, Dkt. 418 at 3-4. The Special Master was persuaded by Chief Judge Gilstrap's analysis in *Infernal Tech., LLC v. Microsoft Corp.*, No. 2:18-cv-144-JRG, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019) and concluded that expert reports provide a "significant" "efficiency gain and truth-seeking function," consistent with "securing the just, speedy, and inexpensive determination" of the action. *Id*. at 6 (citing Fed. R. Civ. P. 1). Plus, the "prejudice . . . of Google alone having access to the same relevant expert reports" outweighs any alleged burden, and any third-party interests are sufficiently protected by the protective order in the present case. *Id*. at 6-7.

Similarly, in *Alaska Air Grp., Inc. v. Anthem, Inc*., the court compelled expert reports from a related antitrust MDL proceeding that addressed the "same questions" at issue in the antitrust case before the court. 2024 WL 347156, at *2-3 (N.D. Ala. Jan. 30, 2024). The reports were discoverable (as here) because (1) they are relevant to the "crucial issues" of market definition, competition, and anticompetitive harm; (2) the "amount in controversy is substantial" because plaintiffs seek treble damages; (3) the defendants "have easy access," whereas the plaintiffs "only have access to brief executive summaries;" (4) "[a]ny confidentiality concerns are resolved" by

---

[1] *See Int'l Shoe Mach. v. United Shoe Mach.*, 315 F.2d 449, 453 (1st Cir. 1963) ("Congress enacted Section 5 of the Clayton Act to encourage treble damage suits by lessening the plaintiff's required proof and litigation expenses"); *State of N.J. v. Morton Salt Co*., 387 F.2d 94, 97 (3d Cir. 1967) ("an equally important purpose behind the enactment of Section 16(b) was to permit private claimants to obtain the benefit of the evidence . . . involved in the Government's action").

3

the protective order; and (5) "the burden and expense of production is virtually non-existent." *Id*. at *3; *see also, e.g.*, *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2024 WL 5048013, at *4 (N.D. Tex. Dec. 9, 2024) (compelling expert reports from prior suit concerning defendant's "near-identical" anticompetitive behavior).

The DOJ Search reports are "a major source of evidence," *Broussard*, 350 F.2d at 353, that should be produced in this case under Rule 26. They address overlapping markets, conduct, and effects and Google's (already-rejected) defenses and hence will "facilitate and expedite" this action, *Gen. Elec. Co.*, 334 F.2d at 486, by providing critical information about conduct for which Google was "already sued and found guilty by the government of antitrust violations." *City of Burbank*, 329 F.2d at 831. Branch has also further tailored its request to only these seven experts:

- **Michael Whinston and Antonio Rangel (DOJ Economists)**: Whinston analyzed market definition and Google's monopoly power. Rangel analyzed the anticompetitive effects from Google's exclusive default status.

- **Kinshuk Jerath (DOJ Marketing)**: Jerath analyzed market definition for search advertising and search text advertising and the anticompetitive effects of Google's conduct in those markets.

- **Edward Fox (Google) and Douglas Oard (DOJ) (Computer Science)**: They addressed competition in the general search market, and the extent of Google's monopoly power.

- **Mark Israel and Kevin Murphy (Google Economists)**: They addressed market definition and monopoly power and the effects of Google's exclusionary agreements.

These experts addressed "the same allegations" of anticompetitive conduct and "the same Google products and services" at issue here. *Google*, No. 4:20-cv-957-SDJ, Dkt. 418 at 3-4. "[O]f course" their reports are relevant. *Open Cheer*, 2024 WL 5048013, *4.

Google claims that expert reports are not an "appropriate" target for discovery, but that is wrong and contrary to the practice in this District. Indeed, Google was ordered to produce expert reports on a materially identical fact pattern in this District just last year. No. 4:20-cv-957-SDJ,

4

Dkt. 418 at 2-7. And this Court and others regularly compel production of prior expert reports. *Kaifi LLC v. T-Mobile*, No. 2:20-cv-00281-JRG, Dkt. 423 at 1-2 (E.D. Tex. Nov. 18, 2021); *Infernal Tech., LLC v. Microsoft*, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019); *Microunity Sys. Eng'g, Inc. v. Apple*, No. 2:10-cv-091-LED-RSP, Dkt. 445 at 1 (E.D. Tex. June 19, 2012).[2]

**III.     The Expert Reports Are Proportional to the Needs of the Case**

Each proportionality factor in Rule 26(b)(1) also favors production here:

**(1)** *The issues at stake are important*: "Google is a monopolist, and it has acted as one to maintain its monopoly." *Google*, 747 F. Supp. 3d at 32. These are "crucial issues" that "deprive[d] the market of free and open competition," *Alaska*, 2024 WL 347156, at *3, and harmed competitors and consumers. As Samsung said at the time about Google's exclusion of Branch, "Google is clearly buying its way to squelch competitors." Compl. ¶¶ 22-25, 90, 177.

**(2)** *The amount in controversy is substantial*: Google specifically targeted Branch, as a recognized competitive threat in multiple markets, and foreclosed Branch from distribution on Android devices. Branch's damages will be substantial by any measure, and they are subject to mandatory trebling. *See, e.g.*, Compl. ¶¶ 11-12, 215-18, 254; 15 U.S.C. § 15.

**(3)** *The relative ease of access*: Google has "easy" and unfair, unilateral access to the reports. *Alaska*, 2024 WL 347156, at *3. Branch would suffer "prejudice [from] Google alone having access" to the reports. *Google*, No. 4:20-cv-957-SDJ, Dkt. 418 at 6 (compelling reports on this basis). Google claims the experts' public trial demonstratives are enough, but summary slides

---

[2] *See Spacetime3D v. Samsung Elecs. Co.*, No. 2:19-CV-00372-JRG, Dkt. 96 at 3 (E.D. Tex. Nov. 23, 2020) ("production of expert discovery from cases with comparable or arguably comparable licenses was proper"); *Kurin, Inc. v. ICU Med., Inc*., 2024 WL 5717968, at *3-5 (C.D. Cal. Nov. 22, 2024) (compelling expert reports from prior action); *Food Lion, LLC v. Dairy Farmers of Am., Inc*., 2020 WL 6947921, at *4-6 (M.D.N.C. Sept. 29, 2020) (same); *In re Hardieplank Fiber Cement Siding Litig.*, 2014 WL 5654318, at *1-3 (D. Minn. Jan. 28, 2014) (same).

used on direct examination are no substitute for the detailed analyses in their Rule 26 reports.[3] The slides summarize opinions at a high level, cite only a tiny fraction of the record evidence, and contain none of the detailed econometrics.

**(4)** *The parties' resources and relative burden*: Google is a technology giant, with a market capitalization greater than $3 trillion. It has the reports,[4] and there is no meaningful burden from disclosure. Even though it is Google's burden under the protective order, Branch even agreed to contact *all* third parties whose information is implicated in the reports. Thirteen of those third parties, including those Google described as a "key" focus of the reports, were already subpoenaed by Branch, and ten of them have already agreed to re-produce their productions from DOJ Search subject to this Court's protective order. This undermines (or limits) Google's claimed burden that it must contact implicated third parties and potentially redact some of their information (which is baseless in any event, *see* below). Regardless, courts compel expert reports even when it requires "[a] review of thousands of pages of documents." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings*, 2018 WL 6978576, at *2 (D. Del. Mar. 8, 2018).

**(5)** *The importance of the discovery*: The reports will significantly advance this case and streamline discovery. That is what Congress wanted: to "*make it easier*" for private firms, like Branch, to prosecute related antitrust claims after federal antitrust enforcers, "by making available . . . all matters previously established." *Burbank*, 329 F.2d at 831; *Emich*, 340 U.S. at 568. Branch should not be denied the detailed expert analyses of the markets, conduct, and anticompetitive

---

[3] For example, according to redacted filings, Professor Whinston's opening report had at least 489 pages, 1500 footnotes, and 204 figures; his rebuttal had at least 174 pages and 25 figures; and his reply had at least 224 pages and 36 figures. *See* DOJ Search, Dkts. 449, 503.

[4] To the extent Google claims otherwise, Google has Rule 34 custody and control of documents that its outside counsel possess. *See, e.g.*, *Axler v. Scientific Ecology Grp., Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) ("party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control."). And the same counsel represents Google in both cases.

effects at issue. And Google should not be allowed to shield bad evidence or change its "prior litigation positions" without Branch's knowledge. *Infernal Tech.*, 2019 WL 5388442, at *2.

### IV. Third-Party Confidentiality Is Not a Valid Basis to Withhold Discovery

Google has also objected to production based on third-party confidentiality designations under the DOJ Search protective order. That is not a basis to withhold relevant discovery. ***First***, this exact argument was rejected in *Google*, No. 4:20-cv-957-SDJ, Dkt. 418 at 7, because the protective order in the pending case was sufficient. This Court has made that point expressly: "[T]here is no reason why [a third party's] confidential information cannot be adequately protected via the Protective Order governing this case." *Infernal Tech.*, 2019 WL 5388442, at *2; *Kaifi*, No. 2:20-cv-00281-JRG, Dkt. 423 at 2 (same); *Expeditors Int'l of Wash., Inc. v. Vastera, Inc.*, 2004 WL 406999, at *2 (N.D. Ill. Feb. 26, 2004) (other POs "should not be used as shields" in discovery).

***Second***, the DOJ Search protective order also authorizes the disclosure of designated information "pursuant to an order of a court." DOJ Search, Dkt. 98 ¶ 16(c)(iv). The Discovery Order (Dkt. 51 at 3) is one such order; an order here would be another.

***Third***, to avoid this very issue, the parties ensured the protective order here has the *same* confidentiality designations and third-party notice procedure as DOJ Search. *Compare* Dkt. 45 ¶¶ 6-7, 10-11, *with* DOJ Search, Dkt. 98 ¶¶ 7-8, 11-12. If a discovery request implicates nonparty information, the receiving party must notify the nonparty within 28 days; the nonparty has 14 days to seek further protection. Dkt. 45 ¶¶ 6-7. Google baselessly refused to provide this notice for the expert reports, but Branch agreed to do it for Google to try to resolve this dispute. So, even under Google's incorrect view that the reports may be produced only with third party consent (rather than notice and an opportunity to object), Branch agreed to provide the notice. "If there *is* an objection, then the Court will take it up." *Kaifi*, No. 2:20-cv-00281-JRG, Dkt. 423 at 2. The Court should order Google to produce the expert reports once the third-party notice period clears.

7

Dated: September 18, 2025  Respectfully submitted,

/s/ Alex Kaplan
Neal Manne
Alex Kaplan
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com

John Schiltz
Danielle Nicholson
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883
jschiltz@susmangodfrey.com
dnicholson@susmangodfrey.com

Zachary B. Savage
Russell Rennie
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001-8602
Tel: (212) 336-8330
Fax: (212) 336-8340
zsavage@susmangodfrey.com
rrennie@susmangodfrey.com

Of Counsel:
Claire Abernathy Henry
State Bar No. 24053063
claire@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

Steven C. Holtzman
20 Hillcrest Road
Berkeley CA 94705
(510) 333-4612

Sholtzman10@outlook.com

*Counsel for Branch Metrics, Inc.*

**CERTIFICATE OF SERVICE**

This is to certify that on September 18, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ Alex Kaplan
Alex Kaplan
*Counsel for Plaintiff*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies pursuant to Local Rule CV-7(h) that the Parties had a lead and local meet and confer by videoconference on September 15, 2025. That followed a series of efforts by the parties to resolve the dispute, over the course of many weeks, including multiple videoconferences, calls, and letters. The relief requested in this motion is opposed.

/s/ Alex Kaplan
Alex Kaplan
*Counsel for Plaintiff*

/s/ Claire Abernathy Henry
Claire Abernathy Henry
*Counsel for Plaintiff*