IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **BRANCH METRICS, INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**GOOGLE LLC**,<br><br>Defendant. | Civil Action No. 2:25-cv-00089-JRG |

**GOOGLE'S OPPOSITION TO BRANCH'S MOTION TO COMPEL**

Branch moves to compel Google to produce the reports of seven experts—none testifying here—simply because those reports were served in the case that Branch argues is the predicate for its lawsuit: the United States Department of Justice ("DOJ") case against Google relating to "general search."  Branch claims significant overlap with the DOJ's case, but the record refutes that claim: Judge Mehta concluded that Branch had no "potential to become a viable platform substitute for Google," so there was no "chilling effect" in "the general search services market" in any respect relevant to Branch.  *United States v. Google LLC*, 747 F. Supp. 3d 1, 170 (D.D.C. 2024).  Branch's motion describes some of the procedural history of the DOJ case, but omits these findings related to Branch, which undermine the relevance of any purported overlap between the DOJ's claims in a general search market with those that Branch asserts here.

To fashion a basis for relevance that circumvents these findings, Branch attempts to define new, additional markets that were not at issue in the DOJ's case.  But the experts in the DOJ case did not opine on those additional markets—Branch conjured those markets solely for this case.  Even were there material overlap with the expert opinions from the DOJ case—and despite a voluminous public record of the opinions those experts offered, including in a published post-trial opinion, Branch describes only the highest-level topic covered by the expert—Branch inflates the reports' relevance by describing them as if they are themselves "evidence."  Expert reports are not "evidence"—they are simply *opinions* about the evidence.  For actual evidence, Google is producing millions of pages of documents, including those relied upon by the experts.  The parties negotiated an agreement on the production of such documents, which Branch omits to mention.

Finally, Branch would run roughshod over confidentiality protections afforded to third parties in the DOJ's action whose competitively sensitive material is all over the subject reports.

Branch's Motion should be denied.

## ARGUMENT

Branch seeks the written reports of four of DOJ's experts and three of Google's experts from that case. Mot. 4. Branch has not stated that it has retained any of the experts in this matter, and neither has Google. Their opinions are not relevant, nor are they evidence that warrants the practice—disfavored in this Court—of cloned discovery.

**I. The Expert Reports Are Not Relevant To This Case.**

"Cloned discovery," requesting "documents produced or received during other litigation," like expert reports, "is irrelevant and immaterial." *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (cleaned up). "In order for documents from one litigation against a defendant to be discoverable in another unrelated action against the defendant, movant must make a particularized showing that the requested materials are relevant and cannot practicably be obtained from discovery in the present case." *Genghiscomm Holdings, LLC v. Samsung Electronics America, Inc.*, 2:24-cv-00242, Dkt. 47 at 3 (E.D. Tex. Mar. 31, 2025).

For cloned discovery of expert reports, specifically, it is "critical" whether the party "is using the same experts in this case." *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 2:20-cv-00337, Dkt. 244 at 1-2 (E.D. Tex. Dec. 15, 2021). This is because there is no "persuasive argument for the relevance of the reports" if "those experts are not testifying in this case." *Id.*[1] And where, as here, Google is not retaining the same experts, this Court has explained "it's very difficult to say that [an] argument based on potential impeachment is compelling." *USAA v. PNC Bank N.A.*, 2:20-cv-00319, Dkt. 187 at 21:20–25, (E.D. Tex. Aug. 15, 2021); *id.* Dkt. 188.[2] Compelling reports

---

[1] *See also Oklahoma, ex rel. Edmondson v. Tyson Foods, Inc.*, 2006 WL 2862216, at *2 (N.D. Okla. Oct. 4, 2006) (denying motion where "the expert witnesses in the . . . cases will be different, and the claims by Plaintiffs in this lawsuit are broader than in the [other] lawsuit.").

[2] Branch cites (at Mot. 7) *Infernal Technology, LLC v. Microsoft Corporation*, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019), but as this Court has observed, that case is "not overly persuas[ive]" if the testifying experts are different. *USAA*, 2:20-cv-00319, Dkt. 187 at 21:20–25; *id.* Dkt. 188.

from experts not testifying will not "significantly advance this case and streamline discovery." Mot. 6; *see also United States v. Google LLC*, 1:23-cv-00108, Dkt. 516 at 30:2-7 (E.D. Va. Jan. 26, 2024) (wanting "someone to lead you the way in doing what you need to do on an independent basis and preparing your expert reports" is not good cause to produce DOJ expert reports to private plaintiffs).

Even if the same experts *were* testifying, the record Branch points to (but does not engage with) reflects no overlap between the market the DOJ pressed and the markets Branch is alleging here. That court specifically rejected the core premise of Branch's motion to compel: that Branch was a competitor in the DOJ's "general search" market. *Google*, 747 F. Supp. 3d at 170. As that court explained, "Branch's founder and former CEO . . . testified that Branch's technology does not 'conflict with or overlap with web search,'" and Branch conceded its "'search use case [is] totally different and distinct from Google search.'" *Id*. Branch cannot simultaneously claim, on the one hand, that the DOJ's case is such a predicate for Branch's own antitrust claims that Branch is entitled to production of the opinions offered by experts in that case, while simply ignoring, on the other hand, that Branch fell *outside* the markets in that case. If Branch is right that these cases really involve "the same technology markets, the same anticompetitive conduct, and the same anticompetitive effects," then in this case, just as in the DOJ case, Branch has no claim. Mot. 1.

While Branch ignores the actual record, it tacitly concedes that these cases *must* involve *different* markets, admitting that, for its claims here, it has added "two more" markets—for Android app search services and Android app distribution—beyond any "markets at issue in the DOJ Search case." Mot. 2. Branch's complaint contains only four markets. Dkt. 1 ¶¶ 5-9. That half of Branch's markets are newly added after the court in the subject action found Branch did not compete with Google in the general search market only confirms the lack of relevant overlap.

3

Despite the lack of overlap, in an attempt to compromise regarding the actual evidence, Google has agreed to review for production Google documents cited in the expert reports, among the several hundred thousand pages of material from the DOJ's case that Google already has produced. Google cannot produce other parties' documents, but beyond just producing its own documents, Google has also provided Branch with a list of "*all* third parties whose information is implicated in the reports." Mot. 6. As Branch notes, it has "already subpoenaed" "[t]hirteen of those third parties." *Id*. If Branch seeks the evidence underlying these reports, it has Google's documents and is already asking third parties for all documents they produced in the DOJ case.

The purported relevance of these expert reports is significantly diminished by the fact that Branch is receiving all relevant Google documents cited in the reports and is already subpoenaing third parties for their documents produced in that case. "Taking into account what has already been produced or will be produced" by Google, "the burden" of producing cloned discovery expert reports "outweighs its likely benefit." *Finjan, Inc. v. ESET, LLC*, 2018 WL 5263243, at *8 (S.D. Cal. Oct. 23, 2018). Because Branch "already has, or [Google] has agreed to provide, the relevant underlying data" there is "no need to order [Google] to produce expert reports." *Ollnova Techs. Ltd. v. Ecobee Techs.*, 2:22-cv-00072, Dkt. 98 at 7 (E.D. Tex. Mar. 7, 2023); *see also SSL Servs., LLC v. Citrix Sys., Inc.*, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010) (refusing to compel expert reports where movant "already has the relevant underlying data").

Notably, Branch concedes that it has access to "the experts' public trial demonstratives" and "summary slides used on direct examination." Mot. 5-6. Yet Branch's motion fails to provide a single citation to any of these materials to demonstrate the relevance of the reports. Indeed, nowhere in Branch's motion does it offer the Court a particular demonstration of why the presumption against cloned discovery should be overridden here with respect to the expert reports.

4

Rather than make that showing, Branch complains that it needs to mine these reports for summaries of evidence that its experts can repackage to "lessen[] the plaintiff's required proof and litigation expenses." Mot. 3 n.1. But Branch's desire to see how other parties' experts drafted reports, in different cases involving different markets, does not make them relevant evidence. Although "having the opinions and conclusions of [Google's] experts might be helpful to [Branch], none of these experts has been identified as a retained expert in the instant case. . . . [u]ntil that occurs, [Branch's] own experts should be capable of analyzing the underlying information and forming their own opinions and conclusions in this case." *In re Blue Cross Blue Shield Antitrust Litig.*, 2015 WL 9694792, at *2 (N.D. Ala. Dec. 9, 2015). This is because "providing the opposing party in a different case" expert reports affords "that opposing party with an unfair advantage." *Spectrum Pharms., Inc. v. Sandoz Inc.*, 2014 WL 3000130, at *1–2 (D. Nev. July 1, 2014).

Branch's cited cases are readily distinguishable—many of them concern reports from experts retained in both cases. Branch relies (at Mot. 1, 3) on *Texas v. Google*, but relevance was **not even litigated** in that case. There was no dispute that Texas brought "the same case, under the same legal theories, with the same allegations, concerning the same Google products," as a DOJ action involving advertising technology proceeding in E.D. Va., *Texas v. Google*, No. 4:20-cv-957, Dkt. 418 at 3 (E.D. Tex. Apr. 24, 2024). Texas's case concededly was "parallel" to the DOJ case in E.D. Va., and Google did not dispute that certain experts were retained in both cases. *Id*. Dkt. 376 at 4. A court in a related case **denied** production of the same DOJ expert reports to private follow-on plaintiffs. *Google*, 1:23-cv-00108, Dkt. 515. Here, by contrast, the cases and experts are not the same—the reports concern markets Branch is outside of or were not at issue in the DOJ's case. Thus, Branch's claim that "[e]xpert reports from prior actions are regularly ordered produced, including against Google," Mot. 3, does not hold up when "the overlap between

5

this action and the Related Cases is not so extensive." *In re Google RTB Consumer Priv. Litig.*, 2022 WL 22936877, at *2 (N.D. Cal. Apr. 29, 2022).

Branch also cites (at Mot. 2-3) a series of cases—*Minnesota Mining & Manufacturing*, *Emich Motors*, *Broussard*, *General Electric*, and *City of Burbank*—purporting to establish a policy favoring production of expert reports from government antitrust cases to follow-on private plaintiffs. These cases stand for no such policy and have nothing to do with discovery—much less discovery of expert reports from past cases. *See, e.g.*, *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951). To the contrary, private litigants cannot "just adopt everything that [the DOJ has done] and give their own spin on it," and instead must "do their own work, honestly, and come up with their own opinions independent of what the DOJ experts do." *Google*, 1:23-cv-00108, Dkt. 516 at 25:14–20; *id.* Dkt. 515.

## II. The Protective Order in the DOJ Matter Prohibits Production of the Reports.

Branch does not dispute that Google is prevented, by court order, from producing here the requested reports, most of which were disclosed by the DOJ, and all of which contain third parties' confidential information. *United States v. Google LLC*, 1:20-cv-03010, Dkt. 98 ("PO") at ¶¶ 11-12 (D.D.C. Jan. 21, 2021). The Search PO was heavily litigated, several third parties were heard on how their confidential information would be protected, and, pursuant to that PO, the vast majority of productions were inaccessible to anyone at Google other than its outside counsel.[3]

Federal Rule of Civil Procedure 26(b)(1) circumscribes discovery as "limited by court order," and the PO precisely so limits Google's ability to produce the DOJ's expert reports.[4] In

---

[3] That "the same confidentiality designations and third-party notice procedure," Mot. 7, are replicated in the protective order here does not alter Google' obligations under the Search PO.
[4] *See Hemlock Semiconductor Corp. v. Kyocera Corp.*, 2016 WL 67596, at *18 (E.D. Mich. Jan. 6, 2016) (Discovery sought "from the non-parties is covered by protective orders, thus making it privileged material under Rule 26(b)(1).").

6

this District, a party's "obligation to produce" considers whether they "have access to these documents in the ordinary course of business, through a contractual relationship, or through an ownership affiliation." *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, 2006 WL 5111116, at *1 (E.D. Tex. Feb. 9, 2006). Google's counsel only has access to the DOJ's expert reports under the Search PO; highly confidential materials (including in expert reports) can be used "solely for the conduct of th[at] Action and" not "for any business, commercial, competitive, personal, or other purpose." PO ¶ 24.

As noted, both the DOJ's and Google's expert reports relied on documents and testimony designated as confidential by third parties. Google has provided Branch with a list of the third parties whose documents were cited in the expert reports—as Branch notes. Mot. 6-7. Branch is using that list "to provide . . . notice" to these third parties in order to obtain their "consent" to producing the underlying documents to Branch. The Search PO would not prohibit Google from producing the reports to Branch if the relevant parties all consented, but short of obtaining that consent the Search PO continues to prohibit Google from producing these expert reports. PO ¶ 16(b). Confidentiality obligations to third parties, enshrined by court order, are therefore a separate legitimate basis for denying discovery, as this Court has previously found: "expert reports and deposition testimony containing [third-party] confidential information from [previous cases] are not discoverable." *USAA*, 2:20-cv-00319, Dkt. 188 at 1.[5]

---

[5] *See also STA Group LLC v. Motorola Solutions, Inc.*, 2:23-cv-00030, Dkt. 311 at 1-2 (E.D. Tex. July 22, 2024) (agreeing "there is significant burden in producing [expert] reports" as "those reports contain[] confidential information of" non-party); *In re Blue Cross Blue Shield Antitrust Litig.*, 2015 WL 9694792, at *3 (declining to "require production of expert reports . . . that contain data and information from" non-parties); *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 217 (D. Colo. 2010) (denying "request for expert reports from the other three matters," "'replete with'" third-party information).

| | |
|---|---|
| Dated: October 2, 2025 | Respectfully submitted, |
| | By: /s/ *Melissa R. Smith*<br>Melissa R. Smith (Bar #24001351)<br>GILLAM & SMITH LLP<br>303 S. Washington Avenue<br>Marshall, Texas 75670<br>Tel: (903) 934-8450<br>Fax: (903) 934-9257<br>melissa@gillamsmithlaw.com |
| | WILLIAMS & CONNOLLY LLP<br>John E. Schmidtlein<br>Benjamin M. Greenblum<br>Alexander S. Zolan<br>680 Maine Avenue SW<br>Washington, DC 20024<br>Tel: (202) 434-5000<br>Fax: (202) 434-5029 |
| | ROPES & GRAY LLP<br>Matthew L. McGinnis<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02199<br>Tel: (617) 951-7567<br>matthew.mcginnis@ropesgray.com |
| | Adam R. Safadi<br>2099 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Tel: (202) 508-4717<br>adam.safadi@ropesgray.com |
| | *Counsel to Defendant Google LLC* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 2nd day of October, 2025.

/s/ *Melissa R. Smith*
Melissa R. Smith