# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BRANCH METRICS, INC., | § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 2:25-CV-00089-JRG |
| v. | § | |
| GOOGLE LLC, | § § | FILED UNDER SEAL |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Google LLC's ("Defendant" or "Google") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Memorandum in Support (the "Motion"). (Dkt. No. 19.) Having considered the Motion and related briefing, the Court finds that it should be and hereby is **DENIED**.

### I.   BACKGROUND

On January 31, 2025, Branch Metrics, Inc. ("Plaintiff, or "Branch") filed an antitrust complaint against Google pertaining to an application search technology which Branch developed called "Discovery Search." (Dkt. No. 1.) This case follows a similar antitrust action instituted by the United States and various states, wherein it was claimed Google violated Section 2 of the Sherman Antitrust Act. *United States v. Google, LLC*, No. 1:20-cv-03010 (D.D.C.). On April 4, 2025, Defendant filed the Motion requesting the case be transferred to the Northern District of California ("NDCA"). (Dkt. No. 19.) Subsequently, in response to Plaintiff's Partially Opposed Motion for Venue Discovery and to Extend Plaintiff's Deadline to Respond to Google's Motion to Transfer Pending Completion of Venue Discovery (Dkt. No. 30), the Court granted venue discovery. (Dkt. No. 40.)

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Second, "[o]nce that threshold inquiry is met, courts analyze both private and public factors relating to the convenience of the parties and witnesses as well as the interests of particular venues in hearing the case." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 764–65 (E.D. Tex. 2009). "A motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is **clearly more convenient**, taking into consideration" the public and private factors. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added and cleaned up). This heighted burden on the movant reflects the deference afforded to the plaintiff's choice of venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

When considering the private and public interest factors, no factor alone holds "dispositive weight" in the analysis. *Id*. The court must "resolve all factual discrepancies in favor of the non-movant." *Vocalife LLC v. Amazon.com, Inc.*, 2019 WL 6345191, at *3 (E.D. Tex. Nov. 27, 2019).

## III. ANALYSIS

### A. Branch Could Have Brought this Case in NDCA

Branch could have filed this action in NDCA, as it is "home to Google's headquarters and where Google transacts business and can be found." (Dkt. No. 19 at 6.) Accordingly, the Court

finds that Google has met the threshold requirement of showing Branch could have brought this case in NDCA.

### B. Private Interest Factors

The four private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citing *Volkswagen I*, 371 F.3d at 203).

#### 1. The Relative Ease of Access to Sources of Proof

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Remmers v. United States*, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009). The Court must consider "the *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis in original). The sources of proof considered under this factor are "documents and physical evidence," not witnesses. *Volkswagen II*, 545 F.3d at 316.

Courts consider the distance that documents or other evidence must be transported from their existing location to the trial venue. *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014) (citing *Volkswagen II*, 545 F.3d at 316) (noting that this factor is still relevant even if documents can be readily transferred electronically). While this factor is still relevant for electronic data, the location of evidence bears less strongly on the transfer analysis when the evidence is electronic rather than physical. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). This factor turns on which party "most probably [has] the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* The movant has the burden to identify sources of proof

3

with enough specificity that a court can determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Sols., Inc.*, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

Google argues that this factor strongly favors transfer because "most, if not all, sources of proof are likely to be located in California." (Dkt. No. 19 at 7.) Google asserts that the documents for both parties "largely reside" in NDCA because both Google and Branch are headquartered there, and because Branch's Complaint quotes or characterizes Google documents for whom "the vast majority of Google custodians…80 out of 102…work (or previously worked) at Google's Mountain View headquarters or elsewhere in the San Francisco Bay Area." (*Id*. at 8.) The only two Google document custodians who reside in Texas are employed in Google's Austin, Texas office; there are no Texas offices in EDTX. (*Id*.) Google further asserts that "[a]cess to important third-party evidence would also benefit from transfer." (*Id*.) Google notes that of the third parties identified in Branch's complaint, none are headquartered in EDTX, while Samsung Next, AT&T, T-Mobile, Microsoft, Amazon, Verizon, and Apple are all headquartered in NDCA.

Branch responds that Google has failed to specifically identify sources of proof and their locations, and instead raises "generalities and speculation about sources of proof." (Dkt. No. 54 at 5.) Branch asserts that because witnesses are not sources of proof, Google's proffering of the locations of their document custodians in California carries no weight. (*Id*.) Branch further asserts that because Google's venue declarant, Aaron Sampson, testified that he does not know where the documents referenced in the Complaint are located, whether the individuals listed in his declaration are still in possession of these documents, or where these individuals live, Google has not met its burden to show that these sources of proof are more easily accessed in NDCA than EDTX. (*Id*.)

4

Branch also notes that of Google's 14 data center locations, "none are in California, two are in Texas (in Red Oak and Midlothian, just 142 and 154 miles from Marshall), and all but three of which are closer to this District than NDCA." (Dkt. No. 54 at 8, citing Dkt. No. 54-22 at 4.) Further, Branch's relevant documents are stored on a server in West Des Moines, Iowa, "roughly 870 miles closer to this District" than NDCA. (Dkt. No. 54 at 8.) Finally, Branch asserts that many of the third-party sources relevant to this case are possessed by Google's outside counsel in Washington, D.C., roughly 1,350 miles closer to this District than NDCA. (*Id*. at 8-9.)

Given that courts should consider both "the location of servers where documents are stored" as well as "the location of document custodians and location where documents are created and maintained" (*In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)), the Court finds that this factor weighs only slightly in favor of transfer. Branch's arguments regarding the location of servers brings this factor much closer to neutrality—it is significant that both Branch and the majority of Google's servers are closer to this District than NDCA. However, while Google has not provided meaningful detail regarding which custodians are necessary for which exact documents in California, the Court is persuaded that Google's documents are generally created and maintained, and its custodians for these documents live and work primarily, in NDCA (and in any event, none live nor work in EDTX).

As such, the Court finds this factor weighs only slightly in favor of transfer.

### 2. The Availability of the Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor concerns the availability of compulsory process to secure the attendance of witnesses whose attendance may need to be secured by a court order. *See Volkswagen II*, 545 F.3d at 316-16. Federal district courts have the absolute power to compel

5

attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). The availability of compulsory process "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31  (citing *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 499 (6th Cir. 2016)).

Google argues that this factor weighs in favor of transfer because "the Northern District of California has a clear advantage in securing more potential, non-cooperating witnesses," including both former Google employees who are custodians for relevant documents and Patrick Chang, a Samsung Next employee who is a custodian of many documents Branch cites in its Complaint. (Dkt. No. 19 at 10-11). Google asserts that "the majority of former Google employees who are custodians for relevant documents cited in Branch's complaint are believed to be located within the reach of compulsory process in [NDCA] but outside the reach of [EDTX]," and that "it is reasonable to expect that Mr. Chang would challenge any subpoena issued by this Court, and is also unlikely to travel voluntarily to this District for testimony" given his attempts to quash his subpoena in the *United States v. Google LLC* trial. (*Id*. at 10-11.)

Branch responds that Google's identification of only one witness, Mr. Chang, should not mean this factor weighs in favor of transfer, especially given that Google does not state it intends to call Mr. Chang at trial, and that Google simply speculates that he would be an unwilling witness without supporting evidence. (Dkt. No. 54 at 9.)

Google's lack of specificity significantly weakens its position as to this factor. Google, as the movant, takes on an obligation to be precise and specific, which it has largely failed. Branch is correct that the only witness Google names, Mr. Chang, cannot carry this factor where Google does not show it will call him at trial or that he will be unwilling to testify in this case. The Court

6

does recognize that Google provided evidence to Branch, in the form of a list with the "work locations of every Google employee identified as potentially relevant based on Branch's allegations," that suggests most of the document custodians that may be called work or have worked in NDCA. (Dkt. No. 56 at 3.) However, Google has not asserted that these employees will be the ones called at trial, and the language in Google's brief is openly equivocal. (Dkt. No. 19 at 10, stating "the majority of former Google employees who are custodians for relevant documents cited in Branch's Complaint are **believed to be located** within the reach of compulsory process in the Northern District of California" (emphasis added).)

On balance, the Court finds this factor weighs only slightly in favor of transfer.

### 3. The Cost of Attendance for Willing Witnesses

The third private interest factor considers the cost of attendance for willing witnesses. When analyzing this factor, all parties and witnesses must be considered "irrespective to their centrality to the issues raised in the case." *Fujitsu*, 639 F. Supp. 2d at 765. The Fifth Circuit has established a so-called "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201.

Google asserts that "almost all witnesses, including witnesses for both parties, reside in California. Most of those witnesses reside within the Northern District of California." (Dkt. No. 19 at 12.) Google further argues that "other potential third-party witnesses likewise reside on the West Coast, including employees of Samsung Next, Apple, Microsoft, Amazon, and T-Mobile." (*Id.*)

Branch responds that Google has not properly identified any nonparty witnesses under this factor, since it speculatively presumes such categorical witnesses are more likely to live in NDCA

7

without identifying anyone by name. (Dkt. No. 54 at 11.) Branch asserts that Google similarly makes vague statements about Google employees, relying on Mr. Sampson's testimony despite his declaration failing to identify whether any particular individual referenced is still located in California. (*Id*.) Finally, Branch puts forth four Google executives it intends to call at trial for whom a trial in EDTX would be more convenient: Adrienne McCallister, a Google VP of Global Partnerships who resides in Austin, Texas; Kesh Patel, a Google General Manager of Strategic Partner Development who resides in Dripping Springs, Texas; Adam Juda, a Google VP of Project Management who resides in New York; and Waylon Brown, a Google Software Engineer and Tech Lead for Google Play Store who resides in Austin, Texas. (*Id*.) Branch additionally provides the names of 15 relevant third-party witnesses for whom trial would be more convenient in this District. (*Id*. at n.16.)

In summary, Google merely alludes to third party witnesses for whom NDCA could be more convenient. However, Google fails to specifically identify the identity of document custodians or other witnesses whom it plans to call and whom it has confirmed still reside in or near NDCA. Meanwhile, Branch offers the names of specific witnesses it intends to call at trial and for whom it has confirmed EDTX is a more convenient forum. Overall, the Court finds this factor to be neutral, especially noting the vague versus precise evidence proffered by Google and Branch, respectively.

### 4. Other Practical Problems

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 545 F.3d at 315.

Google argues that "any trial in [EDTX] would be more burdensome and more expensive than in the Northern District of California, where key witnesses and other sources of proof are

8

located." (Dkt. No. 19 at 12.) It further asserts that Branch sees NDCA as a convenient forum in which to litigate, since it "expressly requires Discovery Search users to bring claims against Branch in that district." (*Id*. at 13.) Google states "[i]t thus makes sense that Branch should litigate its own claims relating to Discovery Search in the same jurisdiction." (*Id*.)

Branch asserts that this factor weighs against transfer, or is at most neutral. (Dkt. No. 54 at 12.) Branch states Google's analysis is wrong, since it conflates the fourth factor with the previous three where it should be considered separately. (*Id*. at 12-13.) Branch further argues that "'Congress' declared policy of expediting' antitrust suits and the special need for preventing their delay… weighs against transfer," because sticking to this case's already-scheduled trial will result in a more "expeditious" verdict in this case. (*Id*. at 13, citing *U.S. v. Nat'l City Lines*, 334 U.S. 573, 589 (1948).)

While the Court agrees that Google conflates this fourth factor with the preceding three factors, the Court discounts its time-to-trial and current schedule given that such are already considered in Branch's favor as to the first public interest factor, discussed in the following section. In short both sides make arguments on this factor that are misplaced.

Ultimately, the Court finds this factor weighs slightly in favor of transfer.

### C. Public Interest Factors

The four public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citing *Volkswagen I*, 371 F.3d at 203).

9

1. **Court Congestion**

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). This factor is the most speculative, and standing alone it should not outweigh other factors. *Id.*

Google argues that the first public interest factor is "unhelpful" in this case "given that it is the 'most speculative.'" (Dkt. No. 19 at 13, citing *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care Inc.*, No. 2:09-cv-200-TJW, 2011 WL 2937365, at *3 (E.D. Tex. July 19, 2011)). Google further asserts that the complexity of this case means that "such basic statistics" as the "fewer pending cases and a faster time-to-trial" in EDTX should not weigh against transfer, since district courts often need more time for discovery and take longer to get to trial in complex cases. (Dkt. No. 19 at 13, citing *Rembrandt Vision Techs.*, 2011 WL 2937365 at *3.)

Branch responds that "[t]he evidence is not close: the median time to disposition is 7.4 months in this District but 30.5 months in NDCA, and the median time to trial is 25.9 months in this District but 40.2 months in NDCA – meaning transfer would likely delay resolution by over a year." (Dkt. No. 54 at 13.)

As this Court has found before, "the U.S. District Court statistics… are clear and unequivocal." *Seven Networks, LLC v. Google LLC*, No. 2:17-cv-442-JRG, 2018 WL 4026760, at *14 (E.D. Tex. Aug.15, 2018). Google itself concedes that EDTX has fewer pending cases before it and a faster time-to-trial. (Dkt. No. 19 at 13.) Notably, neither party disputes this Court's established experience trying complex civil cases.

While this factor may be more speculative than the others,[1] the requisite clarity exists in this case for the Court to find that this factor weighs against transfer.

### 2. Local Interest

This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206. Given that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation" (*Volkswagen I*, 371 F.3d at 206), this factor considers the relationship between the dispute between the parties and the community from which the jury pool will be drawn. Additionally, "local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Fujitsu*, 639 F. Supp. 2d at 769 (quoting *Volkswagen II*, 545 F.3d at 318).

Google argues that residents of NDCA have a particularized interest in this case because both Branch and Google are headquartered there, and because the products at issue were designed and developed there. (Dkt. No. 19 at 14.) Google further asserts that there is no particularized local interest in this case in EDTX. (*Id*.)

Branch does not dispute that there is no particularized interest for the residents of EDTX, but argues that this factor is instead neutral. (Dkt. No. 54 at 14.) Branch asserts that because "this case concerns Google's unlawful restraints and monopolization of technology markets in the U.S. and globally… California citizens have no greater stake here than Texas citizens." (*Id*. at 14-15.) Branch further argues that the Fifth Circuit "focus[es] on events—not the parties" (*In re Clarke*, 94 F.4th 502, 512 (2024)). (Dkt. No. 54 at 15.) Since the events giving rise to this suit are unrelated

---

[1] Each of these factors is unavoidably speculative by nature and in practice. This is compounded by the directive to rule on transfer motions early in the life-cycle of a case knowing that many of the disputed issues will only become clear late in the process, if not on the eve of trial.

11

to where Branch is founded and headquartered, and are unrelated to the development of the products at issue, Branch insists there is no more localized interest in an NDCA jury than an EDTX jury.

Since the Fifth Circuit inquiry regarding this factor focuses on the "events that gave rise to a suit" (*In re TikTok*, 85 F.4th 352, 354 (5th Cir. 2023)) rather than "the parties' significant connections to each forum" (*Id.*), the Court determines that the citizens of NDCA do not have the particularized interest in this case as Google suggests.

Accordingly, the Court determines this factor is neutral.

### 3. Familiarity of the Forum with Law and Conflict of Law

The parties agree that the third and fourth public interest factors are neutral in the transfer analysis. (Dkt. No. 19 at 14-15; Dkt. No. 54 at 15.) The Court thus finds these factors are neutral.

### D. Balancing the Factors

Given the foregoing factors, the Court must determine whether the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit instructs that this analysis is not to consist of a "raw counting of the factors on each side." *In re Radmax*, 720 F.3d at 290 n.8. The Court must make factual determinations to ascertain the degree of convenience a transfer will provide, and answer whether such rises to the level of "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." (*Id.*) This means each factor must be weighed and not simply counted.

In this case, the Court determines that three factors weigh slightly in favor of transfer, one factor weighs against transfer, and four factors are neutral. While this may be a close case, considering the cumulative weight of the various factors, the Court finds that Google has fallen

12

short of carrying its burden to show that the Northern District of California is a "clearly more convenient forum" such that Branch's choice of forum should be set aside. The three factors favoring Google's chosen venue weigh only slightly in favor of transfer, and half of all the factors were neutral—on these facts, NDCA is not "clearly" more convenient.

IV.     **CONCLUSION**

For the reasons stated herein, the Court **DENIES** Google's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Memorandum in Support (Dkt. No. 19) as set forth above.

Given that the parties filed their briefing under seal, the Court files this Opinion under seal as well. However, the parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

**So ORDERED and SIGNED this 21st day of October, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE