# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BRANCH METRICS, INC., | Civil Action No. 2:25-cv-00089-JRG |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| GOOGLE LLC, | |
| Defendant. | |

**PLAINTIFF BRANCH METRICS, INC.'S MOTION TO COMPEL
AND ENFORCE THE COURT'S DISCOVERY ORDER**

Plaintiff Branch Metrics, Inc. ("Branch") moves for an order compelling Google to produce deposition transcripts and relevant expert materials from a parallel antitrust case, *In re Google Play Store Antitrust Litig.*, 3:21-md-02981-JD (N.D. Cal.) ("*Play Store*"), in which the jury found Google liable for illegally monopolizing the Android app distribution market with the same anticompetitive conduct and agreements at issue in this case. These *Play Store* materials are quintessentially relevant, yet Google will not voluntarily produce them. If this sounds familiar, it is: Google is also refusing to produce expert materials from a DOJ antitrust case, *U.S. v. Google*, No. 1:20-cv-03010 (D.D.C.) ("DOJ Search"), that likewise bear directly on Branch's claims. Branch has moved to compel those materials, too. Dkt. 64.

Google cannot seriously dispute these materials are relevant, and there is no genuine burden or third-party confidentiality obstacle to their production. Instead, Google refuses to produce them because it disputes that Branch has antitrust standing in the app distribution market — a basis on which Google has moved to dismiss, Dkt. 25 — and will not produce the material until Branch makes an evidentiary showing to Google's satisfaction. But the Court's Discovery Order expressly forbids this: Google is "not excused" from producing relevant material either "because it challenges the sufficiency of [Branch's] disclosures" or "because there are pending motions to dismiss," Dkt. 51 at 10 — precisely what Google is doing. The Court should end this gamesmanship, enforce the Discovery Order, and compel Google to produce these materials.

I.     **The Disputed Issue**

The jury in *Play Store* held Google liable for unlawfully monopolizing the market for Android app distribution. Dkt. 866 at 3-6. The jury found that Google's exclusionary agreements with mobile device OEMs and carriers secured the exclusive default status of Google's app store on Android phones, perpetuated Google's monopoly in the Android app distribution market, and

1

unreasonably restrained trade. *Id.* The district court denied Google's post-trial motions and entered a permanent injunction. Dkt. 1017. The Ninth Circuit affirmed. 147 F.4th 917 (9th Cir. 2025).

Branch's lawsuit presents many of the same issues as *Play Store*. Branch challenges the same exclusionary agreements — Mobile Application Distribution Agreements (MADAs) and Revenue Share Agreements (RSAs) — and alleges anticompetitive conduct in the same Android app distribution market, among others. *See id.* ¶¶ 141-94 (challenging MADAs and RSAs), ¶¶ 101-08 (identifying relevant markets). Yet Google will not produce the deposition transcripts and expert materials from *Play Store* that address those overlapping issues.

## II.     Deposition Transcripts from *Play Store* Are Relevant and Discoverable

Google's deposition transcripts from *Play Store* are discoverable because they contain testimony about the same market and anticompetitive conduct at issue here.

Courts regularly order the production of deposition transcripts from earlier cases involving substantially similar claims and issues, including in antitrust cases with overlapping markets or conduct. In *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2024 WL 5048013, at *4 (N.D. Tex. Dec. 9, 2024), the court ordered production of expert deposition transcripts from a prior case involving "near-identical" antitrust claims regarding the same defendant's efforts to "form a monopoly over the cheerleading industry" and "harm competition" because they were "of course" relevant to the plaintiff's claims. In *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981), the court ordered production of the defendant's transcripts from a prior antitrust case addressing "substantially similar allegations of . . . monopoly power and anticompetitive activities."[1]

---

[1] *See also Kurin, Inc. v. ICU Med., Inc.*, 2024 WL 5717968, at *3-5 (C.D. Cal. Nov. 22, 2024) (ordering production of relevant deposition transcripts from prior action with "significant factual overlap" and "overlap in the legal underpinnings" of the two cases).

The factual overlap between this case and *Play Store* is substantial, thus placing it comfortably within the case law ordering production of similar transcripts:

- Branch alleges that Google has monopolized the worldwide market for Android app distribution, excluding China. Compl. ¶¶ 109-16. In *Play Store*, the jury found that Google monopolized this precise market. *Play Store*, Dkt. 866 at 3-6.

- Branch alleges that Google unlawfully maintained its monopoly in the Android app distribution market through anticompetitive MADA and RSA agreements. Compl. ¶¶ 141-94. In *Play Store*, the jury found that Google maintained its monopoly and unreasonably restrained trade in this market through these exact same agreements. *Play Store*, Dkt. 866 at 5.

- Branch alleges that Google suppressed competition by making direct app downloads ("sideloading") "substantially and unnecessarily difficult." Compl. ¶ 205. In *Play Store*, the trial record showed that "Google worked to suppress competition by actively impeding users from 'sideloading' competing app stores." *Play Store*, Dkt. 984 at 19.

Given the "near-identical claims," *Open Cheer & Dance*, 2024 WL 5048013, at *4, and "substantially similar allegations of . . . monopoly power and anticompetitive activities," *Carter-Wallace*, 92 F.R.D. at 70, Google's deposition testimony from *Play Store* should be produced.

Despite that substantial overlap, Google insists that some transcripts may still be irrelevant in whole or in part. That is no excuse for Google's wholesale refusal to produce *all* the deposition transcripts from *Play Store*. Transcripts relevant "in part" are still discoverable and must be produced. And the normal rules of discovery apply to transcripts that truly do not contain *any* relevant information, *e.g.*, about the market, Google's market power, or the OEM and carrier agreements that entrench Google's Play Store monopoly (if any exist); those need not be produced.

### III. The Expert Materials from *Play Store* Are Relevant and Discoverable

The expert materials Branch has requested from *Play Store* are also discoverable. The three *Play Store* experts at issue — plaintiff's expert Doug Bernheim and defense rebuttal experts Matthew Gentzkow and Catherine Tucker — analyzed "the same allegations" of anticompetitive conduct and "the same Google products and services" to offer opinions about the same product market, market power, and anticompetitive conduct at the center of Branch's claims here.

3

Courts routinely order the production of expert materials from prior actions. Just last year, the Special Master in *Texas v. Google* ordered Google to produce "expert reports served by the Department of Justice and Google" in the DOJ's antitrust action against Google in E.D.V.A. related to advertising technology — because the Texas case involves "the same allegations" of anticompetitive conduct and "the same Google products and services." No. 4:20-CV-957-SDJ, Dkt. 418 at 3 (citing this Court's analysis in *Infernal Tech., LLC v. Microsoft Corp.*, No. 2:18-cv-144-JRG, 2019 WL 5388442 (E.D. Tex. May 3, 2019)). Other courts in this District, including this Court, have ruled the same. *See* Dkt. 64 at 2-5 (collecting authorities).

The substantial factual overlap here requires production. In *Play Store*, Dr. Bernheim offered the opinions that "Google has monopoly power in the market for app distribution on Android smartphones; that it engages in anticompetitive conduct that sustains and enhances and maintains that power; and that as a result of that, their customers, meaning users and developers, are harmed." *Play Store*, Dkt. 845 at 2375. In support of his opinions, Dr. Bernheim analyzed (a) how to define the relevant product market, *id.* at 2421-42, 2445-47; (b) why Google had monopoly power in the market, including evidence it controlled 85% of the market, *id.* at 2418-21; and (c) how Google used its MADA and RSA agreements to pay competitors not to work on competing app stores, *id.* at 2404-08. This analysis tracks Branch's allegations to a tee. *See* Compl. ¶¶ 101-08, 109-16, 143-48, 179-80, Dr. Bernheim's expert analysis — and the analysis of Google's rebuttal experts, Matthew Gentzkow and Catherine Tucker — are thus relevant to Branch's claims. That analysis (including backup materials and Google documents it cites) should be produced.

Contrary to Google's suggestion, there is no rule limiting discovery of expert reports from prior cases to "same expert" situations. *See* Dkt. 65 at 2-3. In *Texas v. Google*, the Special Master ordered the reports produced because the relevant issue was "primarily . . . one of relevance under

4

Rule 26 and L.R. CV-26(d)" — not identity of experts. No. 4:20-CV-957-SDJ, Dkt. 418 at 5. Likewise, in *Open Cheer*, 2024 WL 5048013, at *4, the reports were discoverable because they involved "near-identical claims" of anticompetitive conduct — not because it was the same expert.

Nor do Google's misreadings of this Court's orders support a "same expert" rule. This Court and others have confirmed by compelling expert reports from prior cases without any reference to a "same expert" factor, including in orders Branch cited in its first motion to compel, *see* Dkt. 64 at 4-5 & n.2, which Google failed to address in its opposition. Dkt. 65 at 5. Google is thus wrong that this Court announced a blanket rule that "there is no 'persuasive argument for the relevance of'" expert reports from a prior action unless the same expert is in both cases. Dkt. 65 at 2-3 (citing *Seagen Inc. v. Daiichi Sankyo*, No. 2:20-cv-00337, Dkt. 244 at 1-2 (E.D. Tex. Dec. 15, 2021)).[2] In *Seagen*, this Court held that discovery of reports from another arbitration was not warranted because (a) the non-movant was not using the same experts, and *different* experts' reports would not be relevant for impeachment; and (b) *apart from that*, the movant "failed to articulate any persuasive argument for the relevance of the reports and testimony" beyond the assertion they "provide[d] necessary 'context.'" Here, the factual overlap between the *Google Play* expert materials and the expert work in this case is far from the vague gesture at "context" in *Seagen* and creates the relevance lacking there.

### IV. The Depositions and Expert Reports Are Proportional to the Needs of the Case

Each Rule 26 proportionality factor favors production. Three factors — amount in controversy, relative ease of access, and importance of the discovery — weigh in favor of production for the reasons in Branch's first motion to compel. Dkt. 64 at 5. As to the other two:

---

[2] Likewise in *USAA v. PNC Bank*, 2:20-cv-00319, Dkt. 187 (E.D. Tex. Aug. 15, 2021), PNC's *only* argument for production was speculation that the same expert *might* testify in that case and his earlier reports could be used for impeachment. 2:20-cv-00319, Dkt. 187 at 13:1-7.

5

**(1)** *The issues at stake are important*: Branch seeks evidence supporting the jury's finding that Google "willfully acquired or maintained monopoly power" in the app distribution market "by engaging in anticompetitive conduct." *Play Store*, Dkt. 984 at 16. These are "crucial issues" that "deprive[d] the market of free and open competition." *Alaska Air Grp., Inc. v. Anthem, Inc.*, 2024 WL 347156, at *3 (N.D. Ala. Jan. 30, 2024).

**(2)** *The parties' resources and relative burden*: There is no real burden on Google. It already agreed to re-produce relevant depositions from the DOJ Search Action and can do the same for *Play Store* action. And the expert materials are a discrete universe easily gathered and produced.

## V.    Google's Refusal to Produce Violates the Discovery Order

Google is violating the "No Excuses" provision of the Discovery Order. Google says it will not produce these materials because Branch has not proved its allegations to Google's satisfaction. After Branch explained their relevance, Google argued that Branch's claims "do not appear to us to align with documents Branch has produced" and re-urged its motion to dismiss by insisting that Branch "point us to Branch documents reflecting a plan to compete in" the market. Ex. A at 1.

On the substance, Google is wrong. Branch has standing to assert app distribution claims because its Discovery product competes in the market as pled by Branch, Google targeted Branch as a threat *in this market*, and Branch's product lowered barriers to entry for other competitors. Dkt. 37 at 20-22. That Google plans to assert a standing defense at trial makes the *Play Store* materials *more* relevant, not less so: "[t]he very point of discovery is to give parties an opportunity to *obtain* evidence relevant to their claims and defenses," which is why Branch is "not required to submit evidence in support of [its] claims before [it] will be permitted to conduct discovery." *Imperial Trading Co. v. Travelers Prop. Cas.*, 2009 WL 1247122, at *3 (E.D. La. May 5, 2009).

The No Excuses provision prohibits Google's demands for pre-discovery evidence here.

6

*First*, Google may not refuse to produce documents relevant to Branch's claims because it believes and argued in its motion to dismiss that Branch fails to plausibly allege antitrust standing. Dkt. 25 at 11. "[P]ending motions to dismiss" do not excuse Google from its disclosure obligations. Dkt. 51 at 10. *Second*, Google may not refuse to produce relevant materials "because it challenges the sufficiency of [Branch's] disclosures." *Id.* Google therefore cannot refuse to produce these materials until Branch produces documents "sufficien[t]" to satisfy Google that Branch has standing. *Finally*, Google's improper standing objections do not excuse it from producing documents relevant to other issues, *e.g.*, the Android app distribution market, Google's market power, and Google's use of MADAs and RSAs to entrench Play Store in the market.

## VI. Third-Party Confidentiality Is Not a Valid Basis to Withhold Discovery

Google cannot withhold discovery based on potential third-party confidentiality objections. Google claims the *Play Store* expert materials may contain third-party confidential information. But "there is no reason why [a third party's] confidential information cannot be adequately protected via the Protective Order governing this case." *Infernal Tech.*, 2019 WL 5388442, at *3; *see also* Dkt. 64 at 7. And the *Play Store* protective order allows Google to produce third-party confidential material in response to a court order so long as Google provides 14 days' notice to the third party. *Play Store*, Dkt. 584 at 16. Google misreads *USAA* as establishing a rule that "expert reports and deposition testimony containing [third-party] confidential information from [previous cases] are not discoverable." Dkt. 65 at 7 (selectively quoting 2:20-cv-00319, Dkt. 188). Instead, the Court denied production for the "reasons set forth on the record," *id.*, which do not apply here.[3]

---

[3] Those reasons were (i) the movant's only rationale for production was speculation about possible impeachment of a potential, not-yet-disclosed expert, Dkt. 187 at 13:1-7, balanced against (ii) the "compelling . . . risk to [third party] Wells Fargo in this hyper-competitive financial services market," which had intervened to oppose production, *id.* at 21:20-22:8. Here, Branch has identified the relevance of the reports and no third party has sought protection due to market risks.

7

Dated: December 2, 2025                    Respectfully submitted,

/s/ Alex Kaplan
Neal Manne
Alex Kaplan
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
nmanne@susmangodfrey.com
akaplan@susmangodfrey.com

John Schiltz
Danielle Nicholson
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Tel: (206) 505-3841
Fax: (206) 516-3883
jschiltz@susmangodfrey.com
dnicholson@susmangodfrey.com

Zachary B. Savage
Russell Rennie
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001-8602
Tel: (212) 336-8330
Fax: (212) 336-8340
zsavage@susmangodfrey.com
rrennie@susmangodfrey.com

Of Counsel:
Claire Abernathy Henry
State Bar No. 24053063
claire@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

Steven C. Holtzman
20 Hillcrest Road
Berkeley CA 94705
(510) 333-4612

8

Sholtzman10@outlook.com

***Counsel for Branch Metrics, Inc.***

9

**CERTIFICATE OF SERVICE**

This is to certify that on December 2, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Alex Kaplan*
Alex Kaplan
*Counsel for Plaintiff*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies pursuant to Local Rule CV-7(h) that the Parties had a lead and local meet and confer by videoconference on November 13, 2025. That followed a series of efforts by the parties to resolve the dispute, over the course of many weeks, including multiple videoconferences, calls, and letters. The relief requested in this motion is opposed.

*/s/ Alex Kaplan*
Alex Kaplan
*Counsel for Plaintiff*

*/s/ Claire Henry*
Claire Abernathy Henry
*Counsel for Plaintiff*
