IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BRANCH METRICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 2:25-cv-00089-JRG |

**GOOGLE'S OPPOSITION TO BRANCH'S MOTION TO COMPEL**

Google has already produced over two million pages of cloned discovery from *United States v. Google*, 20-cv-03010 (D.D.C.) (the "DOJ Search Action"), in which the DOJ unsuccessfully raised essentially the same arguments about Branch that Branch raises here. Branch now seeks cloned discovery from *In re Google Play Store Antitrust Litig.*, 3:21-md-02981 (N.D. Cal.) (the "Play Store Action"), a case that did not involve Branch, and brought by an app developer (which Branch never was), raising claims different from those Branch raises here.

Cloned discovery is subject to abuse and disfavored: "[t]here could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case." *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (citation omitted). And Branch's generalization that the Play Store Action materials "contain testimony about the same market and anticompetitive conduct at issue here," Mot. at 2, is unsupported by specific facts. Without substantive factual overlap, Branch is not entitled to cloned discovery from the Play Store Action. Branch principally relies on the overlap of the same MADA and RSA agreements at issue in both cases. But those agreements were also at issue in the DOJ Search Action, and through already-completed cloned discovery from that action Branch has those agreements and tens of thousands of related documents.

Branch's motion is not only a fishing expedition into a separate, unrelated litigation, but is also an effort to circumvent the limits on ESI searches, i.e., to avoid using custodians and/or search strings on issues tangential to the merits. And Branch's motion argues for the production of deposition transcripts and expert reports—inappropriate cloned discovery in their own right— while not even attempting to justify the production of "the backup materials and Google documents

1

cited in the requested expert reports" that it would have this Court order produced. Dkt. 72-2. Google respectfully requests that the Court deny the motion.

## I.     Materials From the Play Store Action Are Not Relevant to This Case.

### A.     The Play Store Action Materials Cover Irrelevant Issues.

Epic Games, an app developer and owner of an online store for downloading and playing games, sued Google for removing Epic's gaming app, Fortnite, from the Play Store. Epic had deployed "a covert app update that allowed Fortnite users to use Epic's payment system," rather than Google Play's billing system, which was required for developers who distributed digital goods and services through the Play Store. *In re Google Play Store Antitrust Litig.*, 2024 WL 3302068, at *1 (N.D. Cal. July 3, 2024). Epic challenged certain agreements between Google and app developers related to app launches and distribution on the Play Store, along with the MADAs and RSAs (albeit different provisions) at issue in the DOJ Search Action. Epic alleged monopolization of markets for mobile OS licensing, Android in-app billing services, and Android app distribution. *See* Play Store Action, Dkt. 378.

The Play Store Action is not "parallel," Mot. at 1, to this one. While Branch lifts allegations about the alleged app distribution market from Epic's case, Branch is unable to allege for itself that it is an app developer or an app store. Mere copying of a small set of allegations about the alleged antitrust market does not make the subject documents relevant. To the extent Branch is arguing there is overlap because allegations in both cases relate to the distribution of Google apps—i.e., with respect to the MADA and RSA agreements between Google and mobile device manufacturers and carriers (rather than with app developers)—Google has produced the MADA and RSA agreements and thousands of related documents in cloned discovery from the DOJ Search Action. *Infra*, Part I.C. More fundamentally, Branch's claims about those agreements are entirely different than Epic's: whereas Epic complained about payment for distribution of its game in the

Play Store, Branch complains of alleged exclusion of its Discovery Search product outside of the Play Store.

### B. The Claimed Factual Overlap Does Not Justify the Cloned Discovery.

Branch seeks to lower the bar, arguing it is entitled to cloned discovery simply from "overlapping markets or conduct." Mot. at 2. That is an impracticable and overbroad extension of cloned discovery, which requires, at a minimum, "a ***particularized showing*** that the requested materials are relevant[.]" *Genghiscomm Holdings, LLC v. Samsung Electronics America, Inc.*, 2:24-cv-00242, Dkt. 47 at 3 (E.D. Tex. Mar. 31, 2025) (emphasis added); *see also Ollnova Techs. Ltd. v. ecobee Techs., ULC*, No. 2:22-CV-00072-JRG, Dkt. 98 at 6-7 (E.D. Tex. Mar. 7, 2023) ("Ollnova must show more than the fact that prior litigations concerned the same accused products—instead, a *particularized* showing of relevance is required."). Branch does not attempt a particularized showing. It ignores the 350,000 documents in cloned discovery that Google already produced, or the tens of thousands of additional documents Google will review for production under the ESI Order in this case.

Branch's citations do not support a rule that a copycat market definition compels cloned discovery. Courts "order discovery that was produced in previous cases involving a party if that previous case is essentially identical." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2024 WL 5048013, at *4 (N.D. Tex. Dec. 9, 2024) (quotations omitted). Compelling cloned discovery requires more than an unthinking hunt for any seemingly parallel allegation, and Branch's cited authority demonstrates that it has not met the more stringent analysis required. In *Kurin, Inc. v. ICU Medical, Inc.*, the cloned discovery order in favor of a defendant accused of false advertising did not simply analyze whether the allegations were nominally the same. It found *the defendants and alleged harms were similarly situated*, because "in both cases Plaintiff claims the advertisements caused consumers to choose the defendant's devices over Plaintiff's Kurin

3

Lock, causing Plaintiff to suffer similar damages." 2024 WL 5717968, at *4 (C.D. Cal. Nov. 22, 2024).

Branch is not situated similarly to Epic, and the substantive overlap of issues in these cases is *de minimis*. None of Branch's arguments for overlap, Mot. at 3, has anything to do with Branch. Allegations about the "sideloading" of apps are irrelevant to Branch's claims because it was never a distributor of apps. Branch's remote connection to the actual downloading of apps from app stores is facially insufficient to support cloned discovery. *See, e.g.*, *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) (focusing on factual differences between cases to deny request for cloned production).

In conferral on this dispute, Google asked Branch to identify a single document showing material overlap between this case and the Play Store Action warranting cloned discovery. Branch refused, and instead filed this motion, which makes no reference to Branch's participation being similar to Epic's in the allegedly overlapping Android app distribution market. Branch's inability to identify a documentary basis for its position confirms it cannot make the "particularized showing" of connection to the Play Store Action required for cloned discovery. Finding otherwise would create an unsustainable rule that plaintiffs could plead unsubstantiated, indirect (or nonexistent) connections between cases to obtain the production of deposition transcripts and expert reports, including all documents cited therein. That has never been the practice of this Court. *TravelPass Grp.*, 2020 WL 698538, at *6 ("cloned discovery" is "irrelevant and immaterial," and "asking for all documents produced in another matter is not generally proper").

### C. Google Has Already Produced the Potentially Relevant Information that Branch Identified.

Requiring cloned productions from the Play Store Action is also disproportionate. For each of the three allegedly overlapping claims identified in Branch's motion, cloned discovery from the

4

DOJ Search Action already has been produced. *See Town of Westport v. Monsanto Co.*, 2015 WL 13685105, at *3 (D. Mass. Nov. 5, 2015) (rejecting cloned discovery in part because "Defendants have already produced materials related to similar . . . litigation"); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *3-*4 (S.D.N.Y. Nov. 16, 2016) (noting Rule 26(b)(1) requires that the "marginal utility" of discovery must be considered).

Branch points to its allegations regarding an alleged product market "for Android app distribution." Mot. at 3. But in cloned discovery from the DOJ Search Action, Google has already produced tens of thousands of documents relevant to app distribution and the Google Play Store, including at least 39,000 documents hitting on the search terms "play store" OR "google play" OR (app w/3 distribut*). Branch next points to its allegations of "anticompetitive MADA and RSA agreements." *Id.* Different provisions of these same agreements were at issue in the DOJ Search Action, and Google has produced the agreements here, along with almost 41,000 documents hitting on "MADA" or "RSA." Branch's final allegation is that "Google suppressed competition by making direct app downloads ('sideloading') 'substantially and unnecessarily difficult.'" *Id.* As noted, this allegation is wholly unrelated to Branch (which is not an app developer or app store); nonetheless, Google has produced over 2,400 documents hitting on the terms (side w/2 load*) OR (sideload*) OR (direct* w/2 download*). Branch's motion does not account for *any* of these documents or offer any explanation for why those already produced documents are inadequate.

Finally, the parties negotiated cloned discovery months ago and failed to reach a compromise on only one issue—the expert reports from the DOJ Search Action. *See* Dkt. 65. The parties are now negotiating over ESI custodians and search strings, as limited by the ESI Order. This second motion to compel is born of an effort to circumvent the limits on such ESI discovery,

5

seeking to use cloned discovery instead of the allotted custodians and search strings to prop up theories so tangential to this case that Branch did not want to waste its allotments on them.

II.     **Google Has Not Violated the Discovery Order.**

Google has never suggested it is withholding otherwise appropriate discovery until Branch complies with its own mandatory disclosure obligations. Google was clear: the lack of a specific allegation or even a shred of connection between Branch and Epic's allegations anywhere in the hundreds of thousands of documents produced by *either* party simply reflects that there is no such connection, much less one that compels the imposition of yet more cloned discovery. Put another way, the issue is not that Branch has delayed the production of such documents; the issue is that documents showing such a connection do not exist.

Nor is Google withholding documents based on its pending motion to dismiss. Instead, the assessment of relevance and proportionality of cloned discovery under Rule 26 is based on the different substance to the claims in the two cases, and as informed by discovery to date in this case. Branch points to the "No Excuses" provision simply to divert attention from the fact that Branch's own records provide absolutely no basis for the cloned discovery it seeks.

III.    **Production of Expert Reports Should Not Be Compelled for Additional Reasons.**

The three expert reports Branch seeks should not be ordered produced for the reasons described in Google's Opposition to Branch's Motion to Compel expert reports from the DOJ Search Action. Dkt. 65. Indeed, this second motion to compel reads like a reply in support of the first one. No doubt having these reports "months before [it has] to do [its own] expert reports . . . would be helpful." *United States v. Google LLC*, 1:23-cv-00108, Dkt. 516 at 30:2-23 (E.D. Va. Jan. 26, 2024). But just because Branch wants "someone to lead . . . the way in doing what [Branch] need[s] to do on an independent basis and preparing [its] expert reports and coming up with [its] opinions," is no reason to order their production. *Id.* (denying similar requests from

6

private plaintiffs in Google antitrust suit). Regardless, Branch's second attempt to evade the caselaw's limits on cloned discovery fail, as described below.

### A. Branch Has Not Established the Relevance of the Expert Reports.

For the reasons stated above, the Play Store Action expert reports are even less relevant than the reports Branch seeks from the DOJ Search Action. Branch has failed to show any relevance to the many topics covered by these experts, including as to app store security, agreements with app developers, and documents about the in-app payment market.[1] And none of those experts are retained by Google here. *See Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 2:20-cv-00337, Dkt. 244 at 1-2 (E.D. Tex. Dec. 15, 2021).

### B. The Play Store Action Protective Order Prohibits Production of the Reports.

Branch is wrong that Google may unilaterally share expert reports containing confidential information produced in the Play Store Action. Branch does not engage with the fact that a party's "obligation to produce" considers whether they "have access to these documents in the ordinary course of business," *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, 2006 WL 5111116, at *1 (E.D. Tex. Feb. 9, 2006), and Google's counsel only has access to Epic's expert reports under the relevant Protective Order. At a minimum, notice would have to be given so that third parties have the opportunity to seek protection. Branch has that list of third parties, but it has not provided such notice and therefore has no basis to rely upon their silence to support its motion. Mot. at 7 n.3

\*   \*   \*

Google respectfully requests that the Court deny Branch's Motion to Compel.

---

[1] The three experts identified by Branch, Mot. at 3, testified publicly to these topics. *See, e.g.*, Play Store Action Dkt. 591 at 3189:7-19; Dkt. 588 at 2665:13-2679:7, 2686:5-18. Nor would it be consistent with Rule 26 to order Google to go through these voluminous expert reports and depositions to redact the extensive discussions of such topics.

7

Dated: December 16, 2025

Respectfully submitted,

By: /s/ Melissa R. Smith
Melissa R. Smith (Bar #24001351)
GILLIAM & SMITH LLP
303 S. Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gilliamsmithlaw.com

WILLIAMS & CONNOLLY LLP
John E. Schmidtlein
Benjamin M. Greenblum
Alexander S. Zolan
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029

ROPES & GRAY LLP
Matthew L. McGinnis
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7567
matthew.mcginnis@ropesgray.com

Adam R. Safadi
2099 Pennsylvania Avenue NW
Tel: (202) 508-4717
adam.safadi@ropesgray.com

Counsel to Defendant Google LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via email on this 16th day of December, 2025.

/s/ Melissa R. Smith
Melissa R. Smith (Bar #24001351)
melissa@gilliamsmithlaw.com