IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRANCH METRICS INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-CV-00089-JRG |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Google LLC's ("Defendant" or "Google") Motion to Dismiss (the "Motion"). (Dkt. No. 25.) For the reasons stated herein, the Court finds that it should be and hereby is **DENIED**.

## I.    BACKGROUND

Plaintiff Branch Metrics Inc. ("Plaintiff" or "Branch") filed its Complaint in the above-captioned antitrust case on January 31, 2025. (*See* Dkt. No. 1.) Branch is a Delaware corporation founded in 2013. (*Id.* at ¶ 35.) Branch alleges that it has "developed an innovative Android application search technology called 'Discovery Search' or 'Discovery,'" which "was designed to, and if utilized at full capacity can, effectively and extensively allow Android mobile consumers to use an integrated search bar on their device as a 'one-stop shop' to access content across a broad universe of Android apps available on their device, whether already downloaded or not." (*Id.* at ¶ 10.) "In essence, instead of searching the entire internet, Discovery purports to allow users to search for content across mobile apps without the user needing to repeat the same search within each app." (Dkt. No. 25 at 5.)

By contrast, Google is most famous for its search engine, which "draw[s] on a vast store of webpages downloaded from the internet, called an index, to answer users' inquiries." (*Id*. at 4.) Google offers a variety of additional products and services, including Android OS (a phone operating system which Google licenses to phone manufacturers for free) and the Google Play store (which allows Android users to search for, browse, compare, purchase, and download Android apps). (*Id*. at 4.)

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is appropriate where a party "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion "tests only the formal sufficiency of the statement of a claim for relief… it is not a procedure for resolving contests about the facts or the merits of a case." *Games People Play, Inc. v. Nike, Inc.*, No. 1:14-cv-00321, 2015 WL 13657672, at *2 (E.D. Tex. Feb. 13, 2015). In the Fifth Circuit, Rule 12(b)(6) such motions are "viewed with disfavor" and "rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

For such motions, the court construes the complaint in favor of the plaintiff and all facts pleaded are taken to be true. *Tessera, Inc. v. Micron Tech., Inc.*, No. 2:05-cv-00094, 2005 WL 1661106, at *1 (E.D. Tex. July 14, 2005) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Lowrey*, 117 F.3d at 247. However, the plaintiff "'must plead specific facts, not mere conclusory allegations'… a court 'will thus not accept as true conclusory allegations or unwarranted deductions of fact.'" *Tessera*, 2005 WL 1661106, at *1 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

2

### III.    ANALYSIS

Google filed the Motion on April 11, 2025. (*See* Dkt. No. 25.)) In the Motion, Google asserts that Branch "lacks antitrust standing, has not pleaded a colorable tying claim, and has not adequately alleged that Google interfered with Branch's prospective business relations." (*Id*. at 1.) Each argument is addressed in turn below.

#### A. Antitrust Standing

To properly allege antitrust standing, the plaintiff must plead facts which demonstrate: "(1) injury-in-fact… (2) antitrust injury; and (3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance*, 123 F.3d 301, 305 (5th Cir. 1997)). Assessing antitrust standing, particularly in the context of antitrust injury, is "often a fact-intensive inquiry" that is "not typically resolved through motions to dismiss." *Dexon Comp., Inc. v. Cisco Sys., Inc.*, No. 5:22-cv-00053, 2023 WL 2730656, at *27 (E.D. Tex. Mar. 31, 2023) (internal citations omitted).

Google does not challenge the injury-in-fact requirement, but it asserts that Branch has failed to allege both antitrust injury and proper plaintiff status for each of the markets it defines in the Complaint. Branch defines four markets in the Complaint: the general search services market, the search advertising market, the Android app distribution market, and the Android application search services market. (*See, e.g.*, Dkt. No. 1 at ¶ 246.) Branch alleges that it has "suffered and continues to suffer antitrust injury" because "Branch has been specifically targeted by Google's anticompetitive conduct in each market, is a participant in each market, and suffered injury in each market; Branch is a competitor, perceived competitor, or at least nascent competitor in each market; Branch's injuries are inextricably intertwined with and an integral aspect of Google's

3

scheme to monopolize and restrain trade in each market; and Google's anticompetitive conduct against Branch has the intention and effect of thwarting the ability of Branch Discovery Search to lower barriers to entry into each relevant market." (*Id*. at ¶ 215.) The Court finds that Branch has adequately pled antitrust standing for each market it outlines in its Complaint.

### i.      General Search Services

Branch alleges that "[g]eneral search services in the United States is a relevant antitrust product market," and that "[g]eneral search services allow consumers to find responsive information on the internet by entering keyword queries in a general search engine such as Google, Bing, or DuckDuckGo." (*Id*. at ¶ 71.) Google asserts that "Branch lacks standing in the general search services market for the simple reason that Branch Discovery is not a general search engine and Branch does not plead otherwise." (Dkt. No. 25 at 8.) Branch responds that it has antitrust standing in this market under a direct target theory, an in-market or nascent competitor theory, and a lowering barriers to entry theory. (Dkt. No. 37 at 13-20.)

The Court finds that Branch has properly alleged it has standing in the general search services market at least under a direct target theory. While it is true that Branch Discovery is not a general search engine and Branch does not assert as such, that is not necessarily required. *See, e.g., Tessera,* 2005 WL 1661106, *4 (denying a motion to dismiss for lack of antitrust standing "as to the chip market," because while the plaintiff "does not supply chips, or components of them," the plaintiff "alleged that it was a target of the alleged conspiracy in the chip market").

Similar to the plaintiff in *Tessera*, Branch has pled that "Google specifically targeted Branch as a competitive threat to Google search." (Dkt. No. 37 at 13.) The Complaint states, *inter alia*, that "Google recognizes Branch as a competitor to Google Search when Google specifically precludes Discovery Search from the Android ecosystem by withholding revenue share for any

4

new (or old) Android device that incorporates Discovery Search," that Google "re-configured Google Search and its related product offerings to directly compete with Discovery Search's technology by also providing developers and advertisers the options of sending Google Search users either to in-app content or to their websites," and that other parties, such as T-Mobile and Samsung, have also recognized that "but-for Google's anticompetitive conduct, Discovery Search would be a competitive threat to Google Search." (Dkt. No. 1 at ¶¶ 86-89.) These contentions, when taken as true, establish antitrust standing for Branch at this stage in the litigation.

### ii.    Search and Search Text Advertising

Branch defines the "search advertising" market as "consist[ing] of all types of ads generated in response to online search queries" (*id*. at ¶ 131), and the search text advertising market as "a relevant subproduct market of the search advertising market," covering text-based ads that appear in response to user queries (*id*. at ¶ 135). Google argues that the Complaint "confusingly collapses" these two alleged markets. (Dkt. No. 25 at 10.) Google then asserts that Branch does not have antitrust standing in either market because "Google lacks monopoly power in the broader search advertising market," and "Branch does not plausibly allege that it competes with Google in the narrow[] general search text advertising market," including because the search text advertising market "is… by definition limited to results on general search engines." (Dkt. No. 25 at 11.) Branch responds that it has antitrust standing in both markets, because "none of Branch's claims depend on Google having a monopoly in general search text advertising" and "Branch repeatedly alleged its status as a competitor (or at minimum, nascent competitor) in the market for displaying search text ads." (Dkt. No. 37 at 23.)

The Court finds that Branch has adequately alleged it has antitrust standing in both the broader search advertising market and the narrower search text advertising market. As to the

broader search advertising market, Branch's pleadings do not depend on Google's monopoly power in *that* market; the Complaint instead pleads that "Google has entered into agreements with Android distributors, including Android OEMs and carriers, that unreasonably restrain and harm competition in the Android application search services market, the Android app distribution market, the general search services market, and the search advertising market (including the search text ads submarket)." (Dkt. No. 1 at ¶ 246.) Accordingly, Branch's allegations as pled also rest on Google's exploitation of its "monopoly power in Android app distribution." (*Id*. at ¶ 249.)

Regarding the search text advertising submarket, by Branch's own definition—that "'text ads' are displayed in response to a user's query"—no limitation that a general search engine is required is imposed. (*Id*. at ¶135.) In its pleadings regarding this submarket, Branch repeatedly alleges that it is a competitor to Google. The Complaint includes allegations that Branch uses its "in-house ad technology infrastructure" to provide advertisers space to "offer install and reengagement campaigns served by paid search advertising, including text ads, and zero state (i.e., in the pre-search state of the device) interactive ads through Branch Discovery Search." (*Id*. at ¶ 50.) Branch further asserts that it succeeded in providing search text ads, corroborated by the limited implementation it obtained with Samsung, and that Google's anticompetitive conduct was what halted Branch's expansion in this submarket. (*Id*. at ¶ 139.) Accordingly, Branch has properly alleged antitrust standing as to the search advertising and search text advertising markets.

### iii.    Android App Distribution

Branch defines the Android app distribution market as "the market in which consumers may obtain apps for use on Android mobile devices… include[ing] all channels by which Android apps on mobile devices may be distributed to customers." (*Id*. at ¶ 101.) Google asserts that Branch does not have antitrust standing for this market because it does not compete in it and is thus not a

6

proper plaintiff, since Branch Discovery "is a tool for 'find[ing] responsive information in mobile applications,' not for downloading them." (Dkt. No. 25 at 11-12.) Branch responds that it has "adequately alleged antitrust injury as a competitor or nascent competitor in this market; as a direct target of Google's anticompetitive conduct in this market; and as a party that lowers barriers to entry into this market." (Dkt. No. 37 at 20.)

The Court finds that Branch has properly alleged antitrust standing in the Android app distribution market, at least because of its allegations that it is an in-market or nascent competitor. Branch's definition of the market as "include[ing] all channels by which Android apps on mobile devices may be distributed to consumers" (Dkt. No. 1 at ¶ 101) is plainly broader than how Google tries to read it. Branch then alleges that Discovery Search provides a platform through which "consumers may search for, discover, and obtain apps for use on Android mobile devices that meet their specific needs and preferences by allowing consumers to search for, access reviews on, purchase, download, and install mobile apps using the mobile device and an internet connection." (*Id*. at ¶ 117.) Accordingly, Branch has clearly alleged that it also provides a service through which "Android apps on mobile devices may be distributed to customers." It has therefore pled adequate facts to allege that it competes with Google in this market.

### iv.    Android Application Search Services

Branch defines the Android application search services market as "allow[ing] customers to find responsive information in mobile applications by entering keyword queries in an application search service." (*Id*. at ¶ 54.) Google argues that Branch lacks antitrust standing in this market because Google Search is a general search engine that "does not compete with Branch in the application search services market," since "Branch concedes (at ¶ 58) that '[g]eneral search engines that do not provide Android in-app content in response to search queries are not perfect

substitutes for Android application search services." (Dkt. No. 25 at 13.) Branch responds that it has properly alleged antitrust injury as both "an in-market competitor to Google and as a direct target of its anticompetitive conduct." (Dkt. No. 37 at 7.)

The Court finds that Branch has adequately alleged antitrust standing in this market, at least because of its pleadings regarding its direct target status. As discussed in Section III.A.i, *supra*, this Court denied a motion to dismiss in *Tessera* "as to the chip market," where the plaintiff "does not supply chips, or components of them," since the plaintiff *had* successfully alleged "that it was a target of the alleged conspiracy in the chip market." 2005 WL 1661106, *4. Similarly, here, the Complaint alleges that "Google intentionally and specifically targeted Branch as a rival," and that in Google's own words, it worked to "push[] back on [Branch]" via restrictive contracts with distributors to try "to stop the [Discovery Search] functionality." (Dkt. No. 1 at ¶ 11, 17.) The Complaint further includes quotes from Samsung executives discussing this behavior, stating that they believed "Google [w]as 'afraid' that Discovery Search on Samsung devices would 'cannibalize Google's main business' (search), and thus Google 'was attempting to kill all of Branch's attempts' and 'all the features Branch will enable in this enhanced App Search.'" (*Id*. at ¶ 22.) Branch has successfully pled that it was a direct target of Google's anticompetitive conduct in this market.

### B.  Unlawful Tying

Antitrust law prohibits certain "tying arrangements, in which the seller of one product (the tying product) conditions the sale of that product on the consumer's purchase or provision of another (the tied product)." *Dibidale of La., Inc. v. Am. Bank & Tr. Co., New Orleans*, 916 F.2d 300, 305 (5th Cir. 1990) (citing 15 U.S.C. §§ 1, 14, 45). The plaintiff must plead that "two separate product markets have been linked." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984).

The plaintiff must also plead an "anticompetitive effect," *see United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233, 235 n.2 (5th Cir. 1996), or an "actual adverse effect on competition," *see Breaux Bros. Farms v. Teche Sugar Co.*, 21 F.3d 83, 89 (5th Cir. 1994).

Counts Two, Three, Eleven, and Fourteen of the Complaint allege unlawful tying. (Dkt. No. 1 at ¶¶ 255-74, 330-39, 357-65.) Google asserts that Branch's tying claims must be dismissed because "Branch fails to adequately define [the] Android application search services market" (for the same reasons as it argues with respect to antitrust standing), and because "Branch has not plausibly pleaded anticompetitive or actual adverse effects in the Android application market." (Dkt. No. 25 at 16-17.)

The Court has already rejected Google's arguments about Branch's antitrust standing regarding the Android application search services market and found that Branch has adequately alleged such a market. Any factual disputes raised by Google at this stage regarding the contours of that market are premature, as the Court must take all factual matter alleged in the Complaint as true. *See, e.g., OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, 2017 WL 1213629, at *3.

The Court additionally finds that Branch has plausibly alleged anticompetitive effects or actual adverse effects in the Android app services market. Google asserts Branch has not met its burden because "[t]here is no well-pleaded allegation that Google's supposed tie forces anyone *to take a Google service* in lieu of a Branch service in the supposed tie market." (Dkt. No. 25 at 17.)

However, the Complaint clearly alleges that "Google coerces Android distributors not to install alternative search products, including application search products, like Branch Discovery Search, because distributors need the Google Play Store and Google Search to offer a commercially viable Android mobile device," and that "Google's conduct causes competitive harms across this market, including to competing application search firms, OEMs, app developers,

9

Android app distributors, and consumers." (Dkt. No. 1 at ¶¶ 258, 219.) Branch includes specific allegations as to how these anticompetitive effects impact competitors (*id*. at ¶ 220), OEMs, (*id*. at ¶ 221), and app developers (*id*. at ¶ 222). Google may disagree with these allegations, but the Court finds that they have been sufficiently pleaded at this phase in the litigation.

### C. Tortious Interference

Google next asserts that Branch's Count Fifteen, "Interference with Prospective Contractual or Business Relations" (*id*. at ¶¶ 366-373), should be dismissed because Branch has not adequately alleged tortious interference under "federal antitrust law, Texas and California antitrust law, [or] Texas and California common law." (Dkt. No. 25 at 18, citing *id*. at ¶ 372.)

Google focuses on tortious interference under Texas and California law, which include the following elements:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Stone v. FINRA*, 694 F. Supp. 3d 774, 789 (E.D. Tex. 2023) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W. 3d 909, 923 (Tex. 2013)).[1]

Google argues Branch has not alleged (1) a "reasonable probability" that it would have had a business relationship with a third party absent Google's alleged interference, (2) any independently tortious or unlawful act, (3) proximate causation, or (4) "actual damage or loss as a result" of Google's conduct. (Dkt. No. 25 at 18-20.) The Court finds that Branch's Complaint

---

[1] California courts apply an analogous five-prong test. *See, e.g.*, *Song v. Drenberg*, 2019 WL 1998944, at *6 (N.D. Cal. May 6, 2019) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003)).

contains sufficient allegations that Google is liable for tortious interference with contractual or business relations under Texas and California law.

First, Branch properly alleges a "reasonable probability" of business relationships but for Google's interference. For this factor, Branch must "describe the specifics of a proposed agreement that never came to fruition." *Stone*, 694 F. Supp. 3d at 789 (internal citation omitted). However courts in this District have found that, "[a] pre-existing business relationship can suffice to show a reasonable probability of prospective contractual relations." *Loco Brands, LLC v. Butler Am., LLC*, 2019 WL 3015046, at *9 (E.D. Tex. Jan. 28, 2019) (internal citation omitted), *R. & R. adopted by Loco Brands, LLC v. Butler Am., LLC*, 2019 WL 2281252 (E.D. Tex. May 29, 2019). The Complaint meets this burden by alleging that Branch had a pre-existing relationship with Samsung, who was considering implementing Discovery Search "to become standard across all of Samsung's devices," prior to Google's interference. (Dkt. No. 1 at ¶¶ 17, 92, 173.)

Second, Branch properly alleges an independently tortious or unlawful act. Google's sole argument here is that the Complaint's primary alleged violations of antitrust law fail "[f]or the reasons stated above." (Dkt. No. 25 at 19.) Since the Court has found Branch properly alleged antitrust standing and unlawful tying, contrary to Google's arguments above, these claims survive and Branch may rely on them as its independent unlawful act for its tortious interference claim.

Third, Branch properly alleges proximate causation. Proximate causation requires a showing of both cause in fact (i.e. but-for causation) and foreseeability. *See, e.g.*, *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2016 WL 8648927, at *12 (S.D. Tex. Mar. 29, 2016) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)). The Complaint clearly alleges that "Google hatched a secret, multi-pronged scheme to resolve the issue," including Google beginning to "push[] back on [Samsung] to stop the functionality" in response to the plans for "Discovery

11

Search [] to become standard across all of Samsung's upcoming devices." (Dkt. No. 1 at ¶ 17 (internal citations omitted).) Accordingly, Branch alleged both that Google's behavior is the but-for cause of the harm which came to its pre-existing business relationship with Samsung, and that Google not only foresaw, but intended, possible harm to that relationship. While Google is free to dispute these allegations, they are properly pled in the Complaint.

Finally, Branch properly alleges actual damage or loss due to Google's conduct. To meet this requirement, Branch must "'allege facts or explain how or whether [it] suffered any actual damage or loss." *BHL Boresight*, 2016 WL 8648927, at * 12 (quoting *Seeberger Bank of Am., N.A. Ventures Trust 2013 I.H.R. v. Seeberger*, 2015 WL 9200878, at *22 (W.D. Tex. Dec. 16, 2015)). Branch alleges that "Google's ongoing intentional scheme to stop the functionality of Discovery Search has caused specific and intentional harm to Branch's business and property, including by denying Branch the business, sales, distribution, revenues, and profits that Discovery Search would achieve through monetizing these distribution channels but-for Google's illegal conduct, and by the diminution in value of Branch's business." (Dkt. No. 1 at ¶ 52.) It further alleges that "[t]hese injuries include lost domestic and foreign business, sales, distribution, revenues, and profits." (*Id*. at ¶ 53.) Branch has clearly stated what loss it alleges it has faced due to Google's conduct.

### D. State Antitrust Claims

Google's only argument regarding Branch's antitrust claims under Texas and California state law are that these claims "fail for the same reasons" and "should [be] dismiss[ed]… for the same reasons" as its federal antitrust claims. (Dkt. No. 25 at 20.) Since the Court finds it should deny the Motion as to Branch's federal antitrust claims, the Motion should be denied as to Branch's state law antitrust claims as well.

## IV.     CONCLUSION

For the reasons stated herein, Google's Motion to Dismiss (Dkt. No. 25) is **DENIED**.

## So Ordered this

**Mar 18, 2026**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

13